# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

MUELLER BRASS CO.,

    Plaintiff,

vs.                                       No. _____

DAVID CROMPTON,

    Defendant.

## COMPLAINT FOR BREACH OF GUARANTY

**COMES NOW**, the Plaintiff, Mueller Brass Co. ("Mueller Brass"), by and through undersigned counsel of record, and hereby files this Complaint for damages against David Crompton ("Crompton" or "Defendant"). Mueller Brass would state unto the Court as follows:

## PARTIES

1. Plaintiff, Mueller Brass, is a for-profit corporation organized under the laws of the State of Michigan with a principal place of business and headquarters located at 150 Schilling Boulevard, Suite 100, Collierville, Tennessee 38017.

2. Defendant, Crompton, is a resident of the State of Connecticut. Crompton may be served with process at his place of residence, located at 12 Lambs Way, Stonington, Connecticut 06378, or wherever he may be found.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 as there is complete diversity of citizenship and the amount in controversy exceeds $75,000.00, exclusive of interests and costs. This Court has personal jurisdiction over Crompton as the agreement that forms the basis of the instant suit — a personal guaranty — guaranteed payment obligations to a Tennessee-based

entity and was to be performed in Tennessee; that guaranty provided by Crompton was an integral part of a business venture and related personal employment arrangement that was negotiated with Mueller Brass and certain of its Tennessee-based affiliates in the State of Tennessee and this judicial district; Crompton conducted business in this judicial district; and the harm and injuries alleged herein by virtue of Crompton's breach of the personal guaranty accrued in this judicial district.

4. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 as a substantial part of the events or omissions giving rise to the claims herein occurred in this judicial district, and the Defendant is subject to personal jurisdiction in this judicial district.

**FACTS**

5. Crompton is the president, chief executive officer, and (upon information and belief) the majority shareholder of Quick Fitting, Inc. ("Quick Fitting"), a privately held Rhode Island corporation. Quick Fitting is headquartered in Warwick, Rhode Island.

6. Quick Fitting is currently in receivership pursuant to an order of the Rhode Island Superior Court.

7. Mueller Brass is one of America's leading manufacturers of standard and lead-free brass alloys for various industrial applications, including, but not limited to, brass and aluminum forgings, brass and copper bars and rods, as well as custom forged products. Mueller Brass also produces various brass and copper-based alloys in accordance with customers' needs and specifications.

8. Mueller Brass is a wholly owned subsidiary of Mueller Industries, Inc. ("Mueller Industries"), a Memphis metropolitan area-headquartered family of companies that specialize in, among other things, the production and distribution of products utilized in the plumbing, heating, ventilation and air conditioning (HVAC), refrigeration, automotive, appliance, military and

defense, aerospace, marine, and medical industries. Products manufactured and sold by Mueller Industries' family of companies include copper tube and fittings, brass and copper alloy rods and bars, aluminum and brass forgings, aluminum and copper impact extrusions, plastic fittings and valves, refrigeration valves and fittings, and fabricated tubular products. (Where appropriate, Mueller Industries and its affiliated companies, including Mueller Brass, are at times referred to herein as "Mueller.")

9. Since 2011, Mueller has had a business relationship with Crompton and Quick Fitting in which Mueller purchased various types of products from Quick Fitting, and resold those products to distributors, retail outlets, and end users.

10. Throughout the course of the commercial relationship, Crompton served as Mueller's primary point of contact at Quick Fitting and acted as the steward of the relationship between Mueller and Quick Fitting.

11. At various times during the latter half of 2019, Crompton represented to Mueller executives that Quick Fitting was experiencing significant financial difficulties.

12. In connection with a potential transaction between Mueller and Quick Fitting, and to support Quick Fitting in addressing its financial troubles so as to preserve the existing commercial relationship, Mueller Brass and Quick Fitting agreed that Mueller Brass would: (i) acquire two (2) tranches of debt Quick Fitting had incurred with third parties, and (ii) establish a Four Million Dollar ($4,000,000.00) working capital facility for Quick Fitting's benefit.

13. The first tranche of third-party debt to be acquired by Mueller Brass was a two-part loan from Antipodes Acquisitions Limited, a New Zealand limited liability company, consisting of loans of: (1) Two Million Five Hundred Thousand New Zealand Dollars (NZD $2,500,000.00)[1],

---

[1] Approximately $1,680,596.59 USD, though the actual amount may differ due to the exchange rate at the time the Antipodes Loans were made or when the debt became due and owing.

and (2) One Hundred Twenty-Four Million Seven Hundred Eight Thousand Five Hundred Japanese Yen (¥124,708,500)[2] (together, the "Antipodes Loans").

14. The Antipodes Loans are evidenced by two (2) promissory notes, one denominated in New Zealand Dollars (the "NZ Note"), and the other in Japanese Yen (the "Yen Note"), as well as a Loan Agreement – all executed by Crompton. A copy of the NZ Note, the Yen Note, and the Loan Agreement are attached hereto and incorporated herein by reference as collective Exhibit A.

15. Crompton executed the NZ Note and the Yen Note on or about April 16, 2019.

16. The second tranche of Quick Fitting's debt that Mueller Brass was to acquire was a Four Million Dollar ($4,000,000.00) loan from JP Morgan Chase Bank N.A. ("JP Morgan"), which was designed to provide Quick Fitting with working capital (the "JPM Loan").

17. Quick Fitting and JP Morgan consummated and executed the JPM Loan, and the attendant documents, including the Line of Credit Note, in August of 2019.

18. Crompton executed the Credit Agreement and the Line of Credit Note for the JPM Loan.

19. As part of JP Morgan's deal to loan Quick Fitting the $4,000,000.00, JP Morgan demanded a first priority security interest in Quick Fitting's property.

20. As the Antipodes Loans were then first in time, JP Morgan required Antipodes to execute a Subordination Agreement giving JP Morgan lien priority over Antipodes.

21. Before Antipodes would accept and execute the Subordination Agreement, Antipodes required that Crompton first execute a personal guaranty of payment for the Antipodes Loans.

22. On September 4, 2019, Crompton, individually, executed a personal guaranty of the Antipodes Loans (the "Guaranty"). A copy of Crompton's Guaranty is attached hereto and incorporated herein by reference as Exhibit B.

---

[2] Approximately $1,194,928.64 USD, though the actual amount may differ due to the exchange rate at the time the Antipodes Loans were made or when the debt became due and owing.

23.  On that same date, Crompton also executed an amendment to the Antipodes Loans, which referred to, among other things, the proposed Subordination Agreement with JP Morgan and the Guaranty.  A copy of that amendment, the First Amendment and Note Modification Agreement, is attached hereto and incorporated herein by reference as Exhibit C.

24.  On April 15, 2020, with Crompton's knowledge and assent, Mueller Brass purchased the JPM Loan from JP Morgan.

25. Crompton agreed to and acknowledged the purchase and assignment of the JPM Loan by Mueller Brass.

26. Mueller Brass purchased the JPM Loan for $4,000,000.00, as well as $34,416.13 in unpaid and accrued interest on the JPM Loan, pursuant to the JPM Assignment and Acceptance, which was signed by Crompton.

27.  In exchange for the foregoing consideration, JP Morgan assigned Mueller Brass all of JP Morgan's rights and interests in the JPM Loan, and JP Morgan released its security interests in Quick Fitting's intellectual property, including Quick Fitting's trademarks and patents.

28.  As part of this transaction between Mueller Brass and JP Morgan, Crompton acknowledged and accepted the assignment, and in so doing, affixed his signature to the JPM Assignment and Acceptance.

29.  On May 1, 2020, with Crompton's knowledge and assent, Mueller Brass purchased the Antipodes Loans from Antipodes for $2,500,000.00 NZD and ¥124,708,500 pursuant to the Antipodes Assignment and Acceptance dated May 1, 2020.  A copy of the May 1, 2020 Antipodes Assignment and Acceptance is attached hereto and incorporated herein by reference as Exhibit D.

30. In exchange for the foregoing consideration, and as set forth in the Antipodes Assignment and Acceptance, Antipodes assigned Mueller Brass all of Antipodes' rights and interests in the

Antipodes Loans and released Antipodes' security interests in Quick Fitting's intellectual property, including Quick Fitting's patents.

31. Crompton acknowledged and accepted the foregoing purchase and assignment and affixed his signature to the Antipodes Assignment and Acceptance.

32. In addition to purchasing the JPM Loan and the Antipodes Loans, on March 31, 2020, Mueller Brass and Quick Fitting executed a Credit Agreement which established a $4,000,000.00 working capital fund upon which Quick Fitting could draw — under specific conditions — for continued business operations (the "Working Capital Fund").

33. The Working Capital Fund matured on June 30, 2020.

34. Crompton executed the Credit Agreement for the Working Capital Fund.

35. On February 26, 2020, Crompton personally visited Mueller Brass' corporate headquarters in Collierville, Tennessee.

36. While in Collierville, Crompton engaged in extensive negotiations and discussions with Mueller Brass executives and personnel regarding a potential transaction between Mueller Brass and Quick Fitting, as well as go-forward employment arrangement for his own personal and individual benefit.

37. Specifically, while in Collierville, Crompton negotiated and discussed with Mueller Brass its anticipated purchase of the JPM Loan and the Antipodes Loans, which included the related Guaranty, as well as the establishment of the Working Capital Fund.

38. It was agreed and understood between Mueller Brass and Crompton that the proposed transaction was contingent upon, among other things, Crompton's full performance under the Guaranty, which set forth various rights that Mueller Brass was to acquire as the assignee (i.e, the new holder) of the NZ Note and Yen Note evidencing the Antipodes Loans.

39. During March, April, and May of 2020, Crompton engaged in systematic and continuous contacts with the State of Tennessee and Shelby County, and purposely availed himself of the privilege of doing business in, and the laws of, the State of Tennessee.

40. Shortly thereafter, negotiations with Crompton broke down entirely.

41. Following Mueller Brass' purchase of the JPM Loan and the Antipodes Loans, Quick Fitting defaulted on each of the NZ Note and Yen Note for the Antipodes Loans, the JPM Loan, and the Working Capital Fund.

42. On June 1, 2020, Mueller Brass sent Quick Fitting and Crompton the following documents via Federal Express and electronic mail:

    a. Notice of Default and Acceleration for the Antipodes Loans;

    b. Notice of Default and Acceleration for the JPM Loan; and

    c. Notice of Default and Acceleration for the Working Capital Fund.

43. Quick Fitting defaulted on the Antipodes Loans by, among other things, failing to make interest payments when due.

44. In addition to, among other things, failing to pay interest due under the Antipodes Loans, Quick Fitting defaulted on the Antipodes Loans by also defaulting on the JPM Loan and the Working Capital Fund as the Antipodes Loans contain a cross-default provision. Specifically, Quick Fitting defaulted on the JPM Loan by, among other things, failing to make interest payments when due. Quick Fitting defaulted on the Working Capital Fund by, among other things, failing to make interest payments when due and failing to pay outstanding principal amounts and accrued interest by the maturity date of June 30, 2020. [3]

---

[3] Mueller Brass asserts that the list of events of default contained herein is not exhaustive and it waives no rights with respect to any other defaults under the Antipodes Loans, the JPM Loan, and the Working Capital Fund.

45. By virtue of the cross-default provision in the Antipodes Loans, Quick Fitting's defaults on the JPM Loan and Working Capital Fund triggered a default of the Antipodes Loans.

46. Quick Fitting's defaults on the Antipodes Loans triggered Mueller Brass' enforcement rights under Crompton's Guaranty, as Mueller Brass is the holder of the NZ Note and Yen Note, which, *inter alia*, evidence the Antipodes Loans.

47. Upon Quick Fitting's failure to make payments due under the NZ Note and the Yen Note, as well as Quick Fitting's failures to make payments due under the JPM Loan and Working Capital Fund, Crompton immediately became personally liable under his Guaranty for the outstanding principal and accrued interest owed under the Antipodes Loans.

48. Pursuant to the Guaranty, "the liability of [Crompton] . . . shall be primary, direct and immediate and not conditional or contingent upon pursuit by the holder of the [NZ Note and Yen Note] of any remedies it may have against [Quick Fitting] . . . ."

49. Under the Guaranty, Crompton specifically and unconditionally:

> waives: (i) presentment and demand for payment and protest of nonpayment; (ii) notice of acceptance of this guaranty and of presentment, demand and protest (iii) notice of any default hereunder or under the [NZ Note and Yen Note], the Loan Agreement, the Security Documents, or under any other agreement executed in connection with the [NZ Note and Yen Note] and of all indulgences; (iv) demand for observance or performance of, or enforcement of, any terms or provisions of this guaranty or the [NZ Note and Yen Note], the Loan Agreement, the Security Documents, or any instrument or agreement securing the [NZ Note and Yen Note] or this guaranty; and (v) all other notices . . . .

50. In the event of a breach of the Guaranty, Mueller Brass is entitled to accelerate the guarantied indebtedness and demand immediate payment of the entire principal balance and accrued interest in full.

51. In the event of a breach of the Guaranty, Mueller Brass is entitled to its reasonable attorney fees and expenses incurred in enforcing the Guaranty as the Guaranty states that "Guarantor . . .

8

agrees that in the event this Guaranty shall be enforced by suit or otherwise . . . Guarantor will reimburse the holder of the Notes, upon demand, for all expenses incurred in connection therewith, including, without limitation, reasonable attorney fees."

52. The Guaranty contains a choice of law provision establishing that the Guaranty is to be construed in accordance with New Zealand law.

53. Although notice and demand are not required under the Guaranty, on July 1, 2020, Mueller Brass sent Crompton a notice demanding full payment of amounts owed pursuant to the Guaranty within five (5) business days.  Crompton failed and refused to make the required payments, thereby necessitating this action.

## COUNT I:
## BREACH OF CONTRACT/BREACH OF GUARANTY

54. Mueller Brass hereby reasserts and realleges each of the foregoing paragraphs of this Complaint as if set forth herein verbatim.

55. Crompton entered into a valid and binding Guaranty of Quick Fitting's debts to Antipodes under the NZ Note and the Yen Note.

56. The Guaranty is evidenced by a writing signed by the party to be charged, Crompton.

57. The Guaranty provided that it was freely transferable and freely alienable.

58. Mueller Brass entered into a valid and binding contract with Antipodes to purchase all of Antipodes' rights and interests in the loans Antipodes made to Quick Fitting, including Crompton's Guaranty of those loans.

59. As consideration for the purchase and assignment of Antipodes' rights in the Antipodes Loans — including the NZ Note, the Yen Note, and the Guaranty — Mueller Brass paid Antipodes the good and valuable consideration of NZD $2,500,000.00 and ¥124,708,500.

60. By virtue of this purchase and assignment, Mueller Brass became the successor in interest to Antipodes and became the holder of all rights and interests held by Antipodes under the Antipodes Loans, together with all other related documents – including the Guaranty.

61. Crompton signed and acknowledged acceptance of Antipodes' sale and assignment of the Antipodes Loans and the Guaranty to Mueller Brass by his signature on the May 1, 2020 Antipodes Assignment and Acceptance, (*see* Exhibit D).

62. Mueller Brass was entitled to receive timely payment of the sums owed by Quick Fitting under the Antipodes Loans.

63. Mueller Brass was entitled to receive timely payment of the sums owed by Crompton under the Guaranty.

64. Quick Fitting defaulted under the Antipodes Loans by, among other things, failing to pay weekly interest on the NZ Note and Yen Note since March 31, 2020.

65. Crompton defaulted on his Guaranty of the Antipodes Loans by failing to make timely and complete payment of sums due under the NZ Note and the Yen Note following Quick Fitting's default.

66. As of this date, after demand, Quick Fitting has failed to pay Mueller Brass what Quick Fitting owes under the Antipodes Loans, and Crompton has failed to pay Mueller Brass what he owes under the Guaranty of the Antipodes Loans.

67. Quick Fitting also defaulted under the Antipodes Loans, and the attendant notes, by, among other things, defaulting on the JPM Loan and the Working Capital Fund, both of which are subject to cross-default provisions in the Antipodes Loans.

68. Crompton breached his unconditional promise to pay Mueller Brass pursuant to the Guaranty.

69. As the direct and proximate result of Crompton's default under the Guaranty of the Antipodes Loans, including the NZ Note and the Yen Note, Mueller Brass has been damaged.

70. Because the Antipodes Loans are in default, Mueller Brass is entitled to accelerate the entire balance of those loans —including interest and penalties— which, as of July 6, 2020, total $2,563,775.61 New Zealand Dollars[4] and ¥127,889,844.15 Japanese Yen[5].

71. As the result of Quick Fitting's defaults on the Antipodes Loans, Crompton is liable under his Guaranty for the entire accelerated balance of the Antipodes Loans set forth in the preceding paragraph.

72. Although not required under the Guaranty, demand has been made upon Crompton to pay the guarantied indebtedness.

73. Crompton has breached the Guaranty by failing and refusing to pay the guarantied indebtedness.

74. Mueller Brass is entitled to recover the attorney fees and expenses it incurs in bringing the instant suit.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff, Mueller Brass Co., prays for the following relief:

A. That process issue and Crompton be required to answer this Complaint within the time prescribed by law;

B. That Mueller Brass be awarded damages against Crompton for his breach of the Guaranty in the amount of $2,563,775.61 New Zealand Dollars and ¥127,889,844.15 Japanese Yen, which, based upon current exchange rates, equals approximately $2,881,467.83 USD.

---

[4] As of July 10, 2020, this equates to approximately $1,685,067.16 USD with the current exchange rate.
[5] As of July 10, 2020, this equates to approximately $1,196,400.67 USD with the current exchange rate.

Mueller Brass reserves the right to alter and/or supplement this damage calculation based upon relevant exchange rates;

C. That upon conclusion of this action, Mueller Brass be awarded its reasonable attorney fees and expenses incurred to bring and prosecute this action;

D. That Mueller Brass be awarded pre and post-judgment interest at the maximum rate allowable by law;

E. That Mueller Brass be awarded its discretionary costs;

F. That the costs of this action be assessed against Crompton; and

G. For such other and further relief to which Mueller Brass may be entitled, whether under statute, contract, principles of equity, or at law.

Respectfully submitted,

**GLANKLER BROWN, PLLC**

By: /s/ Larry H. Montgomery
Larry H. Montgomery (TN# 9579)
Aubrey B. Greer (TN# 35613)
6000 Poplar Ave., Suite 400
Memphis, Tennessee 38119
Telephone:   (901) 576-1715
Facsimile:    (901) 525-2389
lmontgomery@glankler.com
agreer@glankler.com

*Attorneys for Plaintiff, Mueller Brass Co.*