IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

MUELLER BRASS CO.,

    Plaintiff,

vs.                                                                         No. 2:20-cv-02496-SHL-cgc

DAVID CROMPTON,

    Defendant.

**MUELLER BRASS CO.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO COMPEL**

Plaintiff/Counter-Defendant Mueller Brass Co. ("Mueller Brass"), by and through undersigned counsel and pursuant to Fed. R. Civ. P. 26 and 37, files this Memorandum of Law in Support of its Motion to Compel Defendant David Crompton's ("Crompton") responses to certain of Mueller Brass' written discovery requests.

## **INTRODUCTION**

In 2019, Crompton personally guaranteed a specific debt obligation owed by his former employer, Quick Fitting, Inc. ("Quick Fitting") to Mueller Brass.[1] Through his Personal Guaranty, Crompton, Quick Fitting's former CEO, pledged to pay the then existing balance of the Antipodes Loans in the event that Quick Fitting defaulted on its payment obligations. Additionally, and

---

[1] The original debt obligation was owed to Antipodes Acquisitions Limited, a New Zealand investment entity. In 2020, Mueller Brass purchased Quick Fitting's debt obligation, which was comprised of two (2) loans totaling approximately $3 Million Dollars (the "Anitpodes Loans"), as well as Crompton's Personal Guaranty of that debt.

1

critical to this Motion, Crompton expressly promised in his Personal Guaranty to maintain his financial condition and not dispose of assets in a manner that would impede his ability to meet his payment obligations. Specifically, the Personal Guaranty provides:

> [Crompton] hereby covenants and agrees not to dispose of all or any substantial part of [Crompton]'s assets for less than fair market value nor intentionally cause any substantial diminution of [Crompton]'s net worth as the same exists on the date hereof, and that any of the foregoing shall, at the option of [Mueller Brass], its successors and assigns, be void and of no effect. [Mueller Brass] shall be entitled, without limiting any other rights which [Mueller Brass] may have, to enjoin any breach or threatened breach of this paragraph.

(D.E. 1-2, Crompton's Personal Guaranty, at pgs. 6-7, ¶ 10).

There is no dispute that Quick Fitting defaulted and failed to make loan payments; likewise, there is no dispute that Crompton failed to honor his payment obligation under his Personal Guaranty following Quick Fitting's default.[2] Having forced Mueller Brass to file this action to enforce Crompton's unconditional promise to pay, Crompton apparently now also seeks to sidestep Mueller Brass's appropriate inquiry into whether he has similarly breached (or is actively engaged in breaching) the very financial covenants by which he —a sophisticated party and former CEO of Quick Fitting— knowingly agreed to abide under the express terms of his Personal Guaranty. Contrary to Crompton's generalized and unsupported protestations of harassment, Mueller Brass' relevant and tailored discovery requests regarding Crompton's financial condition that are the subject of this Motion merely seek the transparency necessary to determine whether Crompton has

---

[2] After Mueller Brass sued, it received settlement funds from Quick Fitting's court appointed receiver in Rhode Island (the "Receivership"). Those settlement proceeds partially satisfied Quick Fitting's debt to Mueller Brass, but did not satisfy all the debt, including a portion of the Antipodes Loans. Thus, Mueller Brass seeks to recover from Crompton the balance due under the Antipodes Loans after deduction of the allocated portion of the Receivership payment, plus attorney's fees and legal costs incurred by Mueller Brass in enforcing Crompton's obligations under the Personal Guaranty.

done what he expressly agreed to do as the personal guarantor of Quick Fitting's debt. Furthermore, in the event Crompton has breached the covenants in his Personal Guaranty regarding his personal financial condition (e.g., by dissipating or otherwise diverting assets), or is engaged in an ongoing breach, Mueller Brass is entitled to discovery into any such conduct so that it may pursue any appropriate remedies available under the Personal Guaranty and applicable law.

Throughout the litigation, Crompton has engaged in a systematic attempt to delay the inevitable, including, but not limited to, asserting claims without standing and (as is the focus of this Motion), failing to respond to discovery. Crompton's games have merely served to increase Mueller Brass' legal fees, which Mueller Brass intends to additionally seek from Crompton pursuant to the terms of the Antipodes Loans and Personal Guaranty. While voluminous discovery is not required in this case,[3] as Crompton admits he executed but did not perform under his Personal Guaranty, Mueller Brass is nonetheless entitled to conduct appropriate inquiry into whether Crompton has breached or is actively breaching the express covenants he made to Mueller Brass under the very Personal Guaranty at issue in this case. Such inquiry becomes even more relevant and critical in the event such breach results in an assertion by Crompton that he has a financial inability to pay any judgment rendered in this case. Therefore, Mueller Brass moves the Court to compel Crompton to fully answer the interrogatories, and to produce the documents sought in the requests, that are the subject of this Motion.

---

[3] This is a straightforward action for breach of Crompton's Personal Guaranty, and beyond the discovery that is the subject of this Motion, it is likely that further discovery need only be limited to the question of damages.

**LAW AND ARGUMENT**

On March 23, 2021, Mueller Brass propounded a small number of interrogatories, requests for production of documents, and requests for admission to Crompton. (*See* D.E. 37). As part of Mueller Brass' written discovery requests, Mueller Brass sought a limited amount of personal financial information from Crompton. There was a very clear reason for that – Crompton's Personal Guaranty contains ongoing covenants regarding, among other things, Crompton's personal financial condition and the disposition and/or dissipation of his assets. Mueller Brass sought this information because Crompton's financial condition is central and material to his specific and express obligations to Mueller Brass under the Personal Guaranty. Mueller Brass is entitled to the information and documents sought, and there is no doubt that such information is reasonably calculated to lead to the discovery of admissible evidence. Furthermore, in the event Crompton has breached the covenants in his Personal Guaranty regarding his personal financial condition, that would constitute an additional actionable breach of the Personal Guaranty. Moreover, if any such breach is ongoing or threatened, pursuant to the express terms of the Personal Guaranty, Mueller Brass would be entitled to seek to enjoin it.

**I.      LEGAL STANDARD FOR MOTIONS TO COMPEL DISCOVERY**

Federal Rule of Civil Procedure 26(b)(1) provides that:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Relatedly, Rule 37(a)(3)(B) provides for motions to compel, and Rule 37 (a)(5)(A) provides for attorneys' fees for a successful movant.

"District courts have broad discretion over docket control and the discovery process." *Pittman v. Experian Info. Sols., Inc*., 901 F.3d 619, 642 (6th Cir. 2018), and therefore "the scope of discovery is within the sound discretion of the trial court." *Lavado v. Keohane*, 992 F.2d 601, 604 (6th Cir. 1993) (citation omitted). As such, district courts may grant motions to compel discovery or, by contrast, to limit it in appropriate circumstances. *Pittman*, 901 F.3d at 642–43.

II. **CROMPTON'S RESPONSES TO MUELLER BRASS' WRITTEN DISCOVERY REQUESTS ARE IMPROPER AND DEFICIENT, AND CROMPTON SHOULD BE COMPELLED TO RESPOND**

Mueller Brass sued Crompton for breach of his Personal Guaranty, and the Personal Guaranty itself places Crompton's financial condition at issue. Specifically, the Personal Guaranty provides as follows:

> [Crompton] hereby covenants and agrees not to dispose of all or any substantial part of [Crompton]'s assets for less than fair market value nor intentionally cause any substantial diminution of [Crompton]'s net worth as the same exists on the date hereof, and that any of the foregoing shall, at the option of [Mueller Brass], its successors and assigns, be void and of no effect. [Mueller Brass] shall be entitled, without limiting any other rights which [Mueller Brass] may have, to enjoin any breach or threatened breach of this paragraph.

(D.E. 1-2, Crompton's Personal Guaranty, at pgs. 6-7, ¶ 10). Mueller Brass propounded several discrete interrogatories and requests for production of documents related to Crompton's personal financial condition. Crompton's maintenance of his financial condition is a specific and express requirement of the Personal Guaranty. Impairment of Crompton's financial condition is therefore a breach of the Personal Guaranty. This lawsuit is about Crompton's breach of the Personal Guaranty. Thus, discovery regarding Crompton's financial condition is proper because it seeks information relevant to Mueller Brass' suit on the Personal Guaranty, and which is proportional to the needs of the case. *See Grayiel v. AIO Holdings, LLC*, No. 315CV00821TBRLLK, 2017 WL 11592083, at *3 (W.D. Ky. May 2, 2017) ("where personal financial information is sought to prove

a case in chief or an element thereof, the information can be deemed relevant and can be ordered to be produced.").

Pursuant to the requirements of Local Rule 26.1(b)(2)(A)-(B)[4], the interrogatories and document production requests that are the subject of this Motion, with Crompton's responses, are as follows:

## INTERROGATORIES

**INTERROGATORY NO. 12:** Please identify all financial institutions and other persons, whether domestic or foreign, in which (or with whom) you deposited or placed any of your money or other things of value within the relevant period. In your response, please include the location of any specific branch, if applicable, as well as the name(s) on the account, and the last four (4) digits of the account number. In lieu of identifying each institution as requested herein, you may produce all bank and other similar statements for the relevant period. In producing such statement in lieu of responding hereto, please redact any personally identifying information, but for the last four (4) digits of the account number. As an alternative to redaction, or in addition thereto, Mueller Brass is willing to enter into a protective order in order to assure you of the confidentiality of the information disclosed.

**RESPONSE NO. 12:** See Specific Objections above.

**INTERROGATORY NO. 13:** Please identify all of your assets, including amounts and values thereof as of September 4, 2019. For the purposes of this Interrogatory, "assets" shall include, but not be limited to anything of value including, but not limited to, cash, securities, promissory notes, homes, real property, vehicles of any type (including boats), shares of stock, membership interests in any limited liability company or partnership or joint venture, rights in any assigned debt or court judgment, jewelry, precious metals and stones, equipment, furniture, artwork, and/or any other asset valued in excess of $500.00.

**RESPONSE NO. 13:** See Specific Objections above.

**INTERROGATORY NO. 14:** For all assets identified in response to the preceding Interrogatory, of which you are no longer in possession or where such assets have otherwise been disposed of (whether by sale, transfer, or otherwise), please identify the date on which such

---

[4] "Motions to compel discovery in accordance with Fed. R. Civ. P. 26 through 37 shall: (A) quote verbatim or attach copies of each deposition question, interrogatory, request for admission, or request for production to which objection has been taken or incomplete response has been given; and, (B) include the response and the grounds assigned for the objection (if not apparent from the objection), if any." Local Rule 26.1(b)(2)(A)-(B).

disposition occurred, to whom such disposition was made, why, and—if applicable—for how much consideration such disposition was made.

**RESPONSE NO. 14:** See Specific Objections above.

**INTERROGATORY NO. 15:** Please identify all compensation, whether monetary or otherwise, or any other monies or things of value received from Quick Fitting, Inc., Antipodes, or Simoni within the last five (5) years up to the date of service of these Interrogatories.

**RESPONSE NO. 15:** See Specific Objections above.

## REQUESTS FOR PRODUCTION

**REQUEST NO. 9:** Please produce all local, state, and federal tax documents you filed during the relevant period.

**RESPONSE NO. 9:** See Specific Objections above.

**REQUEST NO. 10:** Please produce all documents evidencing or relating to any money or other things of value you received from Quick Fittings, Inc., Antipodes, or Simoni during the relevant period. This Request includes, but is not limited to, any W-2, 1099, K-1, paystub, check, wire transfer summary, receipt, or direct deposit notice.

**RESPONSE NO. 10:** See Specific Objections above.

**REQUEST NO. 11:** Please produce any documents evidencing any debt obligation or guaranty obligation owed by you to any person other than Antipodes and/or Mueller Brass.

**RESPONSE NO. 11:** See Specific Objections above.

**REQUEST NO. 12:** Please produce your bank statements and financial statements for the relevant period.

**RESPONSE NO. 12:** See Specific Objections above.

**REQUEST NO. 13:** Please produce all applications for all loans or credit extensions you or anyone on your behalf submitted to any financial institution or other person during the relevant period.

**RESPONSE NO. 13:** See Specific Objections above.

For each of the written discovery requests above, Crompton responded by interposing his so-called "Specific Objections." Those purported "Specific Objections" are as follows:

> Defendant further objects to Interrogatory Nos. 12-15 because they seek Defendant's personal and confidential financial information—information that it is not reasonably calculated to lead to the discovery of admissible evidence, but is being sought in order to harass, embarrass, and injure Defendant while giving Plaintiff leverage in the Receivership action and elsewhere. Defendant further objects to Plaintiff's attempt to abuse the discovery process in this proceeding by propounding Interrogatories that seek information that is irrelevant to Plaintiff's claim and constitutes Defendant's personal, confidential financial information. Finally, Defendant objects to Interrogatory Nos. 12-15 to the extent they would result in Defendant incurring needless and onerous expenses beyond the requirements of applicable discovery rules.

\*   \*   \*

> Defendant specifically objects to Request Nos. 9–13 because they seek Defendant's sensitive and confidential personnel financial information, and are predicated on unfounded legal conclusions and speculative assertions regarding obligations that have not been established as relevant to the claim in this matter. Defendant further objects that these Requests seek confidential, proprietary, and/or trade secret information of Defendant and/or other persons or entities, and seeks sensitive and confidential personnel information, the disclosure of which would infringe on the privacy rights of third parties.

With respect to the concerns purportedly raised by Crompton's "Specific Objections," Mueller Brass advised Crompton as follows:

> As to the latter, we can allay those fears easily. Mueller Brass seeks the requested information for exclusive use in this litigation and shall not share the information and documents obtained with any third-party and shall not use or disclose any information or documents obtained in any other proceeding, whether legal or otherwise. Mueller Brass is willing to enter a protective order of appropriate scope, limiting the disclosure of the information and documents obtained to Mueller Brass and its counsel in this litigation only, and limiting use of any document to this litigation only. This should also remedy any concern over disclosure of "proprietary, and/or trade secret information"; though Mueller Brass cannot fathom what could be disclosed constituting such proprietary or trade secret information. Mueller Brass seeks information and documents from Crompton only, and about Crompton only. Mueller Brass is not requesting, nor does it desire disclosure of, any "sensitive and confidential personnel information." The Parties can move for,

8

and enter, a protective order with relative speed and ease, and Mueller Brass is willing to prepare such an order for entry.

(September 2, 2021 Letter from Mueller Brass' Counsel to Crompton's Counsel, attached hereto as Exhibit A).

Additionally, Crompton's objections based upon the Receivership are improper, since that action was concluded pursuant to a final, non-appealable order. There is no possible way Mueller Brass could "leverage" any of the information obtained in discovery in this case to achieve an outcome in the Receivership. The Receivership is over. Moreover, counsel for Mueller Brass has affirmatively offered to keep the information confidential and enter into a protective order. Thus, Crompton's purported objections based upon the disclosure or use of the requested information are without merit.[5]

Crompton's "Specific Objections" also make a half-hearted attempt at raising objections based upon relevance and undue burden. However, boilerplate objections are ineffective. *See Jones v. Am. River Transportation Co., LLC*, No. 19-CV-2558-SHM-TMP, 2020 WL 7865326, at *2 (W.D. Tenn. June 17, 2020) (collecting cases); *Sobol v. Imprimis Pharms.*, No. 16-14339, 2017 WL 5035837, at *1 (E.D. Mich. Oct. 26, 2017) ("[B]oilerplate objections are legally meaningless and amount to a waiver of an objection."). Given that the Personal Guaranty itself places Crompton's finances squarely at issue and imposes upon Crompton express obligations related to the maintenance of his financial condition, Crompton's relevance objection is frivolous. Likewise, Crompton's claim of undue burden is bereft of explanation. First, most of Mueller Brass' written

---

[5] Even if Crompton's concern had merit, this is still not a sufficient basis for withholding discoverable information. In that instance, it is incumbent for Crompton to move the Court for the affirmative relief of the entry of a protective order.

requests can be satisfied by the production of documents which are easily accessible to Crompton (a sophisticated party and former CEO of a multi-million-dollar company) including, but not limited to, his bank statement and other standard household financial documents. Second, Crompton failed to make a showing of undue burden or expense.[6] Mere generalized statements that discovery is unduly burdensome are insufficient. *Anderson v. Dillard's, Inc.*, 251 F.R.D. 307, 311 (W.D. Tenn. 2008). "A responding party must show specifically how each discovery request is burdensome and oppressive by submitting affidavits or offering evidence revealing the nature of the burden . . . . The mere statement by a party that an interrogatory or request for production is overly broad, burdensome, oppressive and irrelevant is not adequate to voice a successful objection." *In re Heparin Prod. Liab. Litig.*, 273 F.R.D. 399, 410 (N.D. Ohio 2011) (internal quotations and citations omitted); *see State Farm Mut. Auto. Ins. Co. v. Elite Health Centers, Inc.*, 364 F. Supp. 3d 758, 766 (E.D. Mich. 2018) (in responding to a subpoena, "[i]f an objection is interposed based on an alleged undue burden, the objecting party must make a specific showing, usually . . . by affidavit, of why the demand is unreasonably burdensome.") (internal quotations omitted). The Personal Guaranty expressly requires Crompton to maintain his financial condition so that the guaranty will continue as viable security for the loans, and relatedly, Mueller is entitled to know whether any breach of his covenant has rendered Crompton unable to meet that obligation. Therefore, discovery regarding Crompton's financial condition is entirely proper in this case.

---

[6] Crompton's boilerplate objections based on "expense" are frankly specious, particularly when his tactics in this matter —including voluminous counterclaims and amended counterclaims he has no standing to assert, and which were otherwise settled and released by Quick Fitting— have demonstrated an apparent willingness to incur substantial legal expense to avoid his payment obligations under his Personal Guaranty, not to mention transparency into his compliance with the Personal Guaranty's express covenants regarding his financial condition.

Crompton's Personal Guaranty, knowingly and voluntarily executed by him, places his financial condition squarely at issue. Crompton's Personal Guaranty is security for the Antipodes Loans. When Quick Fitting defaulted on those loans, Mueller Brass was entitled to look to Crompton for payment since "[t]he liability of [Crompton] under this guaranty shall be primary, direct and immediate." (D.E. 1-2 at pg. 4, ¶ 3). Crompton has breached his Personal Guaranty, and his financial condition is clearly relevant based on the express promises he knowingly made therein. His purported objections are meritless, and accordingly, his refusal to provide the requested information and documents is improper.

## CONCLUSION

Mueller Brass moves the Court to enter an Order compelling Crompton to fully respond to the interrogatories and requests for production that are the subject of this Motion and to produce all documents requested. Mueller Brass further moves the Court for an award of its reasonable attorneys' fees, costs, and expenses related to bringing and prosecuting this Motion.

Respectfully submitted,

**GLANKLER BROWN, PLLC**

By: /s/ Aubrey B. Greer
    Larry H. Montgomery (TN# 9579)
    Aubrey B. Greer (TN# 35613)
    6000 Poplar Ave., Suite 400
    Memphis, Tennessee 38119
    Telephone: (901) 525-1322
    Facsimile: (901) 525-2389
    lmontgomery@glankler.com
    agreer@glankler.com

*Attorneys for Plaintiff, Mueller Brass Co.*

## **CERTIFICATE OF SERVICE**

   I hereby certify that on September 3, 2021, a copy of the foregoing was served on the parties listed below via the Court's ECF System and via e-mail and/or United States Mail, postage prepaid:

**ASHCROFT LAW FIRM**

Michael J. Sullivan (MA #487210) pro hac
Simon J. Cataldo (MA #690879) pro hac
200 State Street, Floor 7
Boston, Massachusetts 02109
Telephone: (617) 573-9400
Facsimile: (703) 247-5446
msullivan@ashcroftlawfirm.com
scataldo@ashcroftlawfirm.com

**BURCH PORTER & JOHNSON, PLLC**

Lawrence J. Laurenzi (TN #9529)
Sarah E. Stuart (TN #35329)
130 North Court Avenue
Memphis, Tennessee 38103
Telephone: (901) 524-5000
Facsimile: (901) 524-5024
llaurenzi@bpjlaw.com
sstuart@bpjlaw.com

*Attorneys for Defendant, David Crompton*

                 /s/ Aubrey B. Greer
                   Aubrey B. Greer