Case Number: KC-2020-0501
Filed in Kent County Superior Court
Submitted: 5/5/2021 2:55 PM
Envelope: 3087468
Reviewer: Lindsay Z.

Case 2:20-cv-02496-SHL-atc   Document 74-1   Filed 10/01/21   Page 1 of 16   PageID 1233

| | |
|---|---|
| STATE OF RHODE ISLAND<br>KENT, SC. | SUPERIOR COURT |

| | |
|---|---|
| MICHAEL ABSHER, DAVID RARDIN, SCOTT RARDIN, MAHESH PATEL, YESWANT PATEL, and MICHAEL PAPPAS<br>        *Petitioners*,<br><br>vs.<br><br>QUICK FITTING, INC.<br>        *Respondent.* | KC-2020-0501 |

## PETITION TO COMPROMISE

Richard J. Land, Esq. ("Receiver"), the duly appointed Permanent Receiver of Quick Fitting, Inc. ("QFI") hereby requests authority to enter into, and approval of, the proposed compromise of the claims filed by Mueller Brass Co. ("Mueller")[1] in this case on the terms set forth herein and entry of a final judgment pursuant to Super. R. Civ. P. 54(b). In support of this Petition, the Receiver states as follows:

### BACKGROUND

1.    This matter was commenced by QFI's Preferred Shareholders as shareholders and unsecured creditors of QFI on June 7, 2020, based on allegations (in part) that (a) Mueller over the prior several weeks had acquired all of QFI's secured debt, (b) Mueller had refused to make advances on QFI's credit line, (c) QFI had no ready access to capital to support its continued business; and (d) weakened by the economic fallout of the COVID-19 crisis, QFI was planning to sell all of its assets to Mueller for what the Preferred Shareholders believed to be far below fair value. Mueller disputes the allegations set forth in the petition filed by the Preferred Shareholders.

2.    On June 8, 2020, the Receiver was appointed the Temporary Receiver of QFI,

---

[1] As used herein, Mueller also refers to each of its subsidiaries and affiliates.

60933102 v2
60952868 v1

**Exhibit A**

Case Number: KC-2020-0501
Filed in Kent County Superior Court
Submitted: 5/5/2021 2:55 PM
Envelope: 3087468
Reviewer: Lindsay Z.

Case 2:20-cv-02496-SHL-atc   Document 74-1   Filed 10/01/21   Page 2 of 16   PageID 1234

thereafter duly qualified and subsequently acted as Temporary Receiver under surety bond ordered by this Court in the amount of $10,000.

3. On July 27, 2020, the Receiver was appointed Permanent Receiver, thereafter duly qualified by posting surety bond in the amount of $10,000 and has since that date acted as Permanent Receiver of QFI.

4. Beginning with his appointment and culminating in December 2020, the Receiver engaged in a lengthy and detailed sale process for QFI's assets. The sale resulted in gross receipts in the amount of $23,000,000, plus a $1,000,000 Promissory Note from the court-approved buyer payable in five (5) years, plus a 1% non-voting membership interest in the court-approved buyer.

5. The Receiver has conducted a preliminary review of claims and believes that, given the sale proceeds, there will be a full distribution of court-approved administrative and secured claims, and a partial distribution for general unsecured claims filed in this matter. The potential for, and amount of, distributions for the general unsecured claims remains contingent on resolution of various issues, including several significant claims to which the Receiver intends to object.[2]

## MUELLER CLAIMS

6. Mueller filed several proofs of claim with the Receiver, including secured and unsecured claims.[3]

7. As set forth in Mueller's Petition, Mueller asserts several secured claims. The following is a summary of the first priority secured claims Mueller asserted against the Estate,

---

[2] With respect to each of these significant claims, the Receiver has already engaged in meaningful discussions toward resolution. Nevertheless, the Receiver believes that it will take some time before all claims are resolved, and certain claims may require court intervention.

[3] The Receiver's statements of the parties' positions are a summary only and shall not be considered a waiver or modification of either the Receiver or Mueller's rights, claims, actions, or arguments, all of which are expressly preserved.

**Exhibit A**

Case Number: KC-2020-0501
Filed in Kent County Superior Court
Submitted: 5/5/2021 2:55 PM
Envelope: 3087468
Reviewer: Lindsay Z.

Case 2:20-cv-02496-SHL-atc   Document 74-1   Filed 10/01/21   Page 3 of 16   PageID 1235

including updated claim amounts:

| | |
|---|---|
| JP Morgan Loan Purchased by Mueller | Principal: $4,034,416.13<br>Accrued and Unpaid Interest: $105,335.84<br>Late Fees: $14,243.79<br>Total: $4,153,995.76 |
| Antipodes $NZ Loan Purchased by Mueller | Principal: $1,745,250.00<br>Accrued and Unpaid Interest: $240,699.06<br>Unpaid Prior Late Fees: $5,413.30<br>Total: $1,991,362.37 |
| Antipodes Yen Loan Purchased by Mueller | Principal: $1,130,015.40<br>Accrued and Unpaid Interest: $155,847.96<br>Unpaid Prior Late Fees: $3,505.01<br>Total: $1,289,368.37 |
| Mueller Working Capital Loan | Principal: $2,258,910.58<br>Interest: $178,044.94<br>Total: $2,436,955.52 |
| Attorneys' fees and costs | $651,077 |
| | **$10,522,759.02** |

8. On or about October 1, 2020, Mueller filed a Petition for Allowance of Secured Claims, For Payment of Secured Claims, And for Authority to Credit Bid.[4]

9. The Receiver, Diamond Trust, and the Preferred Shareholders each objected to Mueller's Petition on various grounds.

10. Mueller's Petition came before the Court, along with the Objections thereto, and was continued without decision. At the hearing, the parties discussed the concept of discovery to resolve the various disputed issues related to Mueller's Petition. At that time, the Receiver and

---

[4] The figures in the table above are the most recent figures asserted by Mueller.

**Exhibit A**

Case Number: KC-2020-0501
Filed in Kent County Superior Court
Submitted: 5/5/2021 2:55 PM
Envelope: 3087468
Reviewer: Lindsay Z.

Case 2:20-cv-02496-SHL-atc   Document 74-1   Filed 10/01/21   Page 4 of 16   PageID 1236

the interested parties were pressing forward toward a sale of QFI's business, and as such, discussions relating to discovery were deferred. Following the sale of QFI's assets in December 2020, the Receiver re-engaged with counsel for Mueller and indicated a willingness to continue the dialogue to work toward a resolution.

11. In addition to the secured claims, Mueller assert unsecured claims against the Estate arising from contractual and non-contractual circumstances. The following is a summary of the unsecured claims:

| | |
|---|---|
| Prepaid deposits and tariffs | $1,346,606.57 |
| Claim of Mueller Comercial de Mexico claim for a malleable fittings project | $20,800 |
| Claim of Mueller Streamline Co. for inventory shortage, product liability claims, and unliquidated amounts for cancellation of purchase orders and other claims that may arise under the Supply Agreement | $586,081.85 |
| | $1,953,488.42 |

12. The aggregate amount of claims Mueller asserted against the Estate is $12,476,247.44.[5]

13. The Receiver and Mueller engaged in discussions concerning Mueller's claims. The Receiver advised Mueller that he intended to file a supplemental objection and assert claims against Mueller if an agreed-upon resolution could not be reached.

14. By letter dated March 2, 2021, Mueller demanded immediate payment of its

---

[5] The aggregate amount does not include default interest, which Mueller has not yet asserted but would likely assert under the loan documents if the proposed compromise is not approved by the Court.

4

**Exhibit A**

Case Number: KC-2020-0501
Filed in Kent County Superior Court
Submitted: 5/5/2021 2:55 PM
Envelope: 3087468
Reviewer: Lindsay Z.

Case 2:20-cv-02496-SHL-atc   Document 74-1   Filed 10/01/21   Page 5 of 16   PageID 1237

secured claim and made various allegations about the Receiver's conduct and investigation of the Mueller issues ("Mueller March 2 Letter").

15. The Receiver responded to the Mueller March 2 Letter by letter dated March 11, 2021, denying the merits of Mueller's allegations, and providing a summary/basis for QFI's claims against Mueller. Also on March 11, 2021, the Receiver made a proposal to Mueller to resolve the disputed issues between the Receiver and Mueller.

16. Mueller did not respond to the Receiver's March 11 proposal but agreed to participate in a non-binding mediation. The parties worked cooperatively to select a mediator and schedule a mediation session.

17. Each of Mueller and the Receiver provided detailed, confidential mediation statements to the mediator and the parties participated in a full-day mediation on April 16, 2021, at the conclusion of which the parties arrived at the settlement set forth below.

### PROPOSED SETTLEMENT

18. The Receiver and Mueller disagree as to the validity, treatment, and amounts of Mueller's claims against QFI and QFI's claims against Mueller. Because of these disagreements, and absent a compromise, the Receiver would object to Mueller's secured and unsecured claims and bring claims against Mueller, including claims for lender liability. Naturally, Mueller maintains that its conduct throughout its relationship with QFI was reasonable and appropriate under all circumstances, and that it was the conduct of QFI and its management that caused all of QFI's operational and financial issues. Absent resolution, the parties would engage in protracted and expensive litigation (particularly considering the fact intensive nature of the claims asserted) that would materially delay progress in the receivership estate, and delay (and perhaps significantly impair) distribution to other creditors of the receivership estate.

**Exhibit A**

Case Number: KC-2020-0501
Filed in Kent County Superior Court
Submitted: 5/5/2021 2:55 PM
Envelope: 3087468
Reviewer: Lindsay Z.

Case 2:20-cv-02496-SHL-atc   Document 74-1   Filed 10/01/21   Page 6 of 16   PageID 1238

19. Subject to this Court's approval, the proposed compromise is as follows:

    a. *Secured Claims* – the Receiver recommends approval of Mueller's secured claims in the aggregate amount of $9,487,500 to be paid within 3 business days of a final, non-appealed order and final judgment pursuant to Super. R. Civ. P. 54(b) approving the proposed compromise. Mueller has allocated the aggregate settlement amount as follows:

        i. $4,479,534 under the JP Morgan credit agreement,

        ii. $1,122,736 under the Antipodes NZ$ credit agreement,

        iii. $1,122,736 under the Antipodes Yen credit agreement, and

        iv. $2,762,494 under the Mueller working capital loan.

    b. *Unsecured Claims* – Mueller shall waive all unsecured claims effective upon a final, non-appealed order and final judgment approving the proposed compromise.

    c. *Settlement Agreement* - The parties shall execute a settlement agreement substantially in the form attached as **Exhibit 1** (the "Settlement Agreement").

20. Based upon a review of the risks associated with litigating the disputed issues, potential for continuing default interest, together with the significant legal expenses that each of the parties would likely incur, subject to the approval of the Court, the Receiver and Mueller propose to compromise the claims as set forth herein.[6]

21. In Brook v. The Education Partnership, this Court set forth the framework for the

---

[6] Non-default interest accrues on Mueller's secured claims at a rate of approximately $650,000 per year. Default interest would add approximately $200,000 per year. The Receiver anticipates that litigation with Mueller would take many months (or many years) and cost several hundred thousand dollars due to the intensely factual nature of the claims and complex damage issues. In the event the Receiver's claims prove unsuccessful, these additional costs, together with the legal fees incurred by Mueller (which would arguably be payable as costs of collection), could be borne by the general unsecured creditors, further impairing their recovery.

**Exhibit A**

Case Number: KC-2020-0501
Filed in Kent County Superior Court
Submitted: 5/5/2021 2:55 PM
Envelope: 3087468
Reviewer: Lindsay Z.

Court's consideration of proposed compromises of disputed claims. 2010 WL 1456787 (R.I. Super. Ct. April 8, 2010). Specifically, the Court should consider (1) the probability of success in the litigation; (2) the complexity, expense, inconvenience, and delay of the litigation involved; and (3) the paramount interests of the creditors. Id.

22. With respect to the first prong, the Receiver believes that he would be successful in his objections to Mueller's claims and QFI's claims against Mueller. However, while the Receiver is confident that the merits mitigate in favor of the Estate, the Receiver nevertheless recognizes Mueller's vigorous denial of the Receiver's allegations and the inherent risk of litigation, particularly where the disputes involve complex theories of lender liability, usury, and other similar business torts (all of which are deeply fact specific and may include unsettled legal theories). Mueller has threatened additional counterclaims against QFI that would further protract the litigation and impede the ability of other creditors to recover from the Estate. Further, the availability of witnesses and pertinent information, together with credibility determinations,[7] are hazards the parties cannot predict.

23. The second prong – complexity, expense, inconvenience, and delay – likewise supports compromise. The disputes with Mueller involve complicated factual issues, legal issues relating to lender liability, usury, performance, satisfaction, and contractual interpretation. Regardless of outcome, it is undeniable that the myriad factual and legal issues presented by the different component claims constructs would, as noted above, indefinitely delay the resolution of the Estate and the distributions to creditors. Such litigation is likely to require many months (or

---

[7] Mueller has asserted that the former CEO and CFO of QFI engaged in conduct that was materially misleading. The testimony of these individuals as well as the senior management of Mueller, and the Court's evaluation of such testimony, would likely be central to any liability determination.

**Exhibit A**

Case Number: KC-2020-0501
Filed in Kent County Superior Court
Submitted: 5/5/2021 2:55 PM
Envelope: 3087468
Reviewer: Lindsay Z.

Case 2:20-cv-02496-SHL-atc   Document 74-1   Filed 10/01/21   Page 8 of 16   PageID 1240

years), and more likely than not, would be followed by appeals. All the while, the unsecured creditors would be left to wait on the sidelines.[8]

24. Finally, the third prong – paramount interests of the creditors – undoubtedly supports compromise. The proposed settlement reduces the amount of Mueller's secured claim from $10,522,759.02[9] to $9,487,500 and completely removes Mueller's $1,953,488.42 aggregate unsecured claim from the unsecured creditor pool. These compromises directly enhance the potential distribution to all court-approved general unsecured creditors.

25. In sum, the Receiver's involvement in protracted litigation, appeals, and other proceedings with Mueller would require the Estate to incur substantial costs and would delay distribution to QFI's general unsecured creditors. In contrast, the proposed compromise will avoid expense, reduce the general unsecured creditor pool, facilitate and potentially accelerate distributions, and provide greater certainty for the other creditors of the Estate. Accordingly, the Receiver believes that compromise on the terms set forth in the Settlement Agreement is in the best interest of the Estate and its creditors and comports with the well-established principles for approval of compromises in receivership proceedings.

26. The Receiver has provided notice and a copy of this Petition to Compromise to all parties who filed claims in the Receivership and interested parties known to the Receiver, as particularly set forth in the affidavit of service filed in connection herewith.

---

[8] The Receiver would be remiss if he did not point out that the disputes with Mueller are not the only remaining issues in this case and that it is entirely possible that other disputed claims may require time-consuming litigation. However, the Receiver believes that Mueller's claim constitutes the one of most significant claims against the estate that must be resolved before any potential distribution to other creditors can be considered.

[9] This amount does not include default interest that Mueller would likely assert if the Court were to approve its secured claims following litigation.

**Exhibit A**

Case Number: KC-2020-0501
Filed in Kent County Superior Court
Submitted: 5/5/2021 2:55 PM
Envelope: 3087468
Reviewer: Lindsay Z.

Case 2:20-cv-02496-SHL-atc   Document 74-1   Filed 10/01/21   Page 9 of 16   PageID 1241

WHEREFORE, the Receiver respectfully requests that this Court:

a) authorize and approve the proposed compromise as set forth in the Settlement Agreement and authorize the Receiver to execute and deliver the Settlement Agreement;

b) find that the proposed compromise is fair, reasonable and in the best interest of the receivership estate and its creditors;

c) expressly direct entry of final judgment pursuant to Super. R. Civ. P. 54(b) because there is no just reason for delay; and

d) grant the Receiver such other and further relief that the Court deems appropriate.

Richard J. Land, as Receiver of Quick Fitting, Inc.,

By his attorneys,

/s/ Andre S. Digou
Andre S. Digou (8711)
Chace Ruttenberg & Freedman, LLP
One Park Row, Suite 300
Providence, RI 02903
Tel.: 401-453-6400
Email: adigou@crfllp.com
Dated: May 5, 2020

**Exhibit A**

Case Number: KC-2020-0501
Filed in Kent County Superior Court
Submitted: 5/5/2021 2:55 PM
Envelope: 3087468
Reviewer: Lindsay Z.

Case 2:20-cv-02496-SHL-atc   Document 74-1   Filed 10/01/21   Page 10 of 16   PageID 1242

# EXHIBIT 1

**Exhibit A**

Case Number: KC-2020-0501
Filed in Kent County Superior Court
Submitted: 5/5/2021 2:55 PM
Envelope: 3087468
Reviewer: Lindsay Z.

Case 2:20-cv-02496-SHL-atc   Document 74-1   Filed 10/01/21   Page 11 of 16   PageID 1243

# SETTLEMENT AGREEMENT

This Settlement Agreement (this "Agreement") dated May __, 2021 (the "Execution Date") is made by and between Mueller Brass Co., a Michigan corporation having a principal place of business at 150 Schilling Blvd., Suite 100, Collierville, Tennessee 38017 ("Mueller") and Richard J. Land in his capacity as Permanent Receiver (the "Receiver") of and on behalf of Quick Fitting, Inc., a Rhode Island corporation ("QFI").

## Recitals

WHEREAS, Mueller is engaged in the business of, among other things, manufacturing industrial products;

WHEREAS, QFI was engaged in the business of manufacturing and supplying plumbing and electrical fittings;

WHEREAS, Mueller and QFI were parties to certain supply and other commercial agreements, both directly and with other counterparties;

WHEREAS, in 2020, QFI and Mueller entered into negotiations regarding a transaction whereby Mueller would acquire some or all of the assets and/or equity of QFI (a "Potential Transaction");

WHEREAS, while Mueller and QFI engaged in discussions regarding the terms of a Potential Transaction, on March 31, 2020, Mueller extended a working capital loan (the "Mueller Loan") to QFI to enable QFI to support working capital needs;

WHEREAS, Mueller acquired (a) on April 15, 2020, the credit and related agreements whereby J.P. Morgan Chase ("JPM") had extended a working capital line of credit to QFI (the "JPM Loan"), and (b) on May 1, 2020, the credit and related agreements whereby Antipodes Acquisitions Limited ("Antipodes") had loaned several million dollars to QFI pursuant to two separate loan agreements, a New Zealand Dollars loan (the "NZ Loan") and a Japanese Yen loan (the "Yen Loan," and together with the NZ Loan, the "Antipodes Loans");

WHEREAS, pursuant to the Mueller Loan, the JPM Loan and the Antipodes Loans, Mueller has asserted a first, second and third priority, perfected security interests in all assets of QFI, including its intellectual property;

WHEREAS, on June 7, 2020, the preferred shareholders of QFI filed a Petition to Liquidate Business and for Appointment of a Receiver (the "Petition") with the Rhode Island Superior Court (the "Court");

WHEREAS, pursuant to the Petition, the Court appointed the Receiver as the Temporary Receiver of QFI on June 8, 2020;

1

**Exhibit A**

Case Number: KC-2020-0501
Filed in Kent County Superior Court
Submitted: 5/5/2021 2:55 PM
Envelope: 3087468
Reviewer: Lindsay Z.

Case 2:20-cv-02496-SHL-atc   Document 74-1   Filed 10/01/21   Page 12 of 16   PageID 1244

WHEREAS, on July 27, 2020, the Court appointed the Receiver as the Permanent Receiver of QFI;

WHEREAS, on October 1, 2020, Mueller filed a Petition for Approval of its Secured Claims against QFI (the "Secured Claims");

WHEREAS, Mueller has calculated that as of March 31, 2021, the Secured Claims, including interest and fees, total $10,522,759.02;

WHEREAS, Mueller and certain of its affiliates, including Mueller Streamline Co. and Mueller Comercial de Mexico (collectively with Mueller, the "Mueller Affiliates") also filed claims against QFI totaling $1,953,488.42 (the "Unsecured Claims");

WHEREAS, the Receiver filed a Limited Objection to the Secured Claims, and thereafter furnished Mueller with a summary of the Receiver's grounds for a supplemental objection and various claims against Mueller;

WHEREAS, Mueller and the Receiver engaged in discussions concerning the Secured Claims and the Unsecured Claims and the Receiver's objections and claims; and

WHEREAS, following a mediation conducted on April 16, 2021, Mueller and the Receiver agreed to settle the dispute regarding the Secured Claims and the Unsecured Claims by agreeing that the Receiver would recommend that the Court approve the Secured Claims in the aggregate amount of $9,487,500, and that the Unsecured Claims would be withdrawn in their entirety effective upon approval of this Agreement by the Court pursuant to a final judgment in accordance with the terms thereof.

NOW THEREFORE, in consideration of the above premises (which are incorporated herein) and the mutual covenants contained herein, and other good and valuable consideration, the receipt and sufficiency of which are acknowledged, Mueller and the Receiver agree as follows:

1. <u>Allowance of Secured Claims</u>.

(a) Upon the terms and subject to the conditions contained herein, the Receiver and Mueller agree that the Secured Claims shall be allowed in the aggregate amount of $9,487,500.00 (the "Settlement Amount"). In connection with the Settlement Amount, Mueller furnished the following allocation:

    (i) Mueller's Secured Claim under the JPM Loan shall be allowed in the amount of $4,479,534.00;

    (ii) Mueller's Secured Claim under the NZ Loan shall be allowed in the amount of $1,122,736.00;

    (iii) Mueller's Secured Claim under the Yen Loan shall be allowed in the amount of $1,122,736.00; and

**Exhibit A**

Case Number: KC-2020-0501
Filed in Kent County Superior Court
Submitted: 5/5/2021 2:55 PM
Envelope: 3087468
Reviewer: Lindsay Z.

Case 2:20-cv-02496-SHL-atc   Document 74-1   Filed 10/01/21   Page 13 of 16   PageID 1245

    (iv) Mueller's Secured Claim under the Mueller Loan shall be allowed in the amount of $2,762,494.00.

  (b) The Receiver shall pay the Settlement Amount to Mueller in immediately available funds within three (3) business days after the Effective Date, as defined in Section 4 of this Agreement.

  2. <u>Unsecured Claims</u>. The Mueller Affiliates shall withdraw the Unsecured Claims with prejudice within three (3) business days after the Effective Date.

  3. <u>Surviving Claims</u>.

  (a) Nothing contained herein shall constitute a release of any rights or claims that Mueller may have against any guarantor of the JPM Loan, the Antipodes Loans or the Mueller Loan (the "Guaranty Rights"). Mueller expressly reserves in full and does not waive any Guaranty Rights. For avoidance of doubt, this Agreement does not operate to release any guarantor of any guaranties given pursuant to the JPM Loan, the Antipodes Loans or the Mueller Loan, including but not limited to the loan agreements and promissory notes held by Mueller.

  (b) Nothing contained herein shall constitute a release of any rights or claims that the Receiver may have against any party other than Mueller and the Mueller Affiliates, including without limitation, any claims of QFI against any party other than Mueller and the Mueller Affiliates arising from or related to the Antipodes Loans prior to the date on which Mueller acquired the Antipodes Loans.

  4. <u>Settlement Approval; Conditions Precedent</u>. Within five (5) business days after the date of this Agreement, the Receiver shall file a pleading with the Court seeking an order approving the settlement terms set forth herein pursuant to Rhode Island Superior Court Rule 54(b) (the "Order"). This Agreement shall be effective as of the Execution Date, provided that, the obligations of the Receiver and Mueller are expressly conditioned upon the Court's entry of an Order and Final Judgment Pursuant to Super. R. Civ. P. 54(b) ("Final Judgment") approving the terms hereof as to which all appeal rights have expired, whereupon the Order and the Final Judgment shall constitute the "Final Order." The date upon which the Order and the Final Judgment become the Final Order shall be the "Effective Date." If the Court does not enter an Order approving the settlement contained herein, or if any party appeals such Order and Final Judgment and the Order and Final Judgment do not become a Final Order within ninety (90) days from the Execution Date, then, at the option of either the Receiver or Mueller, the terms and agreements set forth herein shall be null, void and without any force or effect, and each of Mueller and the Receiver shall be restored to the position it or he had prior to reaching this Agreement, with such party retaining all rights, defenses, claims and counterclaims as if this Agreement never were executed. Notwithstanding the foregoing, if the Order and Final Judgment are subject to appeal and the appealing party or parties post a bond for the full Settlement Amount, the Receiver and Mueller may elect, solely by mutual agreement, to proceed to effectuate the settlement notwithstanding such appeal whereby the Effective Date shall occur on the date the Receiver pays the Settlement Amount to Mueller, and the terms of this

**Exhibit A**

Case Number: KC-2020-0501
Filed in Kent County Superior Court
Submitted: 5/5/2021 2:55 PM
Envelope: 3087468
Reviewer: Lindsay Z.

Case 2:20-cv-02496-SHL-atc   Document 74-1   Filed 10/01/21   Page 14 of 16   PageID 1246

Agreement shall be effective as of such date.

5.  No Further Claims.

(a) For and in consideration of this Agreement and the consideration as contemplated herein and upon receipt of the Settlement Amount, Mueller, on behalf of itself, the Mueller Affiliates, and their respective agents, employees, officers, directors, equity owners, attorneys, affiliates, successors and assigns (the "Mueller Parties"), knowingly and voluntarily agree to discontinue any present, and not make any future claims, demands, defenses, controversies, actions or causes of action against Quick Fitting or the Receiver of whatever nature or character, known or unknown, from the beginning of the world through the Effective Date, arising from or in any way relating to the receivership proceedings, the Mueller Secured Claims, the Mueller Unsecured Claims or otherwise relating to the relationship between Mueller and QFI. The foregoing does not release the Guaranty Rights specifically reserved pursuant to Section 3(a) hereof, or the Receiver's obligation to abide by the terms of this Agreement.

(b) For and in consideration of this Agreement and the consideration as contemplated herein and upon Mueller's receipt of the Settlement Amount, the Receiver, on behalf of himself and QFI, and their respective agents, employees, officers, directors, equity owners, attorneys, affiliates, successors and assigns, knowingly and voluntarily agree to discontinue any present, and not make any future claims, demands, defenses, controversies, actions or causes of action against the Mueller Parties of whatever nature or character, known or unknown, from the beginning of the world through the Effective Date, arising from or in any way relating to the receivership proceedings, the Mueller Secured Claims, the Mueller Unsecured Claims or otherwise relating to the relationship between Mueller and QFI including but not limited to lender liability claims. The foregoing does not release the surviving claims reserved in Section 3(b), or Mueller's obligation to abide by the terms of this Agreement.

6.  General Representations and Warranties. Each of Mueller and the Receiver represents and warrants that, subject to Court approval in the case of the Receiver: (a) it has the necessary authority to settle this matter fully on behalf of itself and all parties whose interests it purports to resolve in accordance with the terms of this Agreement, (b) the individual who executes this Agreement is fully authorized to do so and to bind such entity; (c) it shall act in good faith and to cooperate fully with the other party in carrying out the intent of this Agreement; (d) the execution, delivery and performance of this Agreement does not and will not violate, conflict with or constitute a breach or default under (i) any document, agreement or other instrument to which it is a party or by which it or any of its assets are bound, or (ii) any law, rule, ruling, regulation or requirement of any governmental entity, court, agency, authority or other entity; (f) it is the owner of the claims resolved herein and has the entire and exclusive authority to settle them on the terms herein set forth; (g) it has not assigned, pledged or transferred or purported to assign, pledge or transfer, to any person or entity, any claim or right, or any portion thereof or interest therein, such party purports to resolve by this Agreement, and from and after the Execution Date, it will not assign, pledge or transfer any claim or right, or any portion thereof or interest therein, that is resolved by this Agreement, including but not limited to the Mueller Secured Claims or the Mueller Unsecured Claims; (h) it has executed this Agreement as its free and voluntary act, without any duress, coercion or undue influence exerted by or on behalf of the

**Exhibit A**

Case Number: KC-2020-0501
Filed in Kent County Superior Court
Submitted: 5/5/2021 2:55 PM
Envelope: 3087468
Reviewer: Lindsay Z.

Case 2:20-cv-02496-SHL-atc   Document 74-1   Filed 10/01/21   Page 15 of 16   PageID 1247

other party hereto or any other person or entity; and (i) no promise, representation, conduct or consideration by the other party hereto, its owners, agents, employees or attorneys, or persons in privity to it, has induced the execution of this Agreement, except for those representations and agreements specifically set forth herein.

7. <u>Entire Agreement; Amendments</u>. This Agreement contains all of the terms, conditions, agreements and representations of each party hereto respecting the settlement and compromise of all disputes between the parties arising from or relating to the subject matter hereof. The terms and conditions represent the entire, final, and complete agreement of the parties relating to the subject of this Agreement, and supersede and replace all prior or existing written and oral agreements between the parties or their representatives relating thereto. This Agreement may not be amended, supplemented, or otherwise modified except in a writing executed by both parties.

8. <u>Counterparts</u>. This Agreement may be executed in counterparts, each of which shall be an original but all of which shall constitute one and the same agreement. An electronic or facsimile transmission shall be as valid and enforceable as an original.

9. <u>Governing Law; Venue.</u> This Agreement shall be construed in accordance with, and be governed by, the laws of the State of Rhode Island without giving effect to the conflict of laws provisions thereof or of any other jurisdiction. Any disputes regarding the enforceability or interpretation of this Agreement shall be brought before the Court.

10. <u>Not an Admission</u>. By entering into this Agreement, no party admits any liability to the other party or to any other person or entity. The terms of this Agreement reflect the settlement and compromise of disputed claims.

11. <u>Construction</u>. Each of the parties participated in drafting this Agreement after consulting with counsel. Therefore, the language of this Agreement shall not be presumptively construed in favor for or against any party.

12. <u>Survival</u>. All warranties, covenants and agreements contained herein shall survive the Agreement and the performance of the transactions contemplated hereby.

13. <u>Costs</u>. Each party shall be responsible for its own costs, including attorneys' fees, in connection with this Agreement.

**Exhibit A**

Case Number: KC-2020-0501
Filed in Kent County Superior Court
Submitted: 5/5/2021 2:55 PM
Envelope: 3087468
Reviewer: Lindsay Z.

Case 2:20-cv-02496-SHL-atc   Document 74-1   Filed 10/01/21   Page 16 of 16   PageID 1248

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first above written, to be effective as of the Effective Date.

MUELLER BRASS CO.

By: *[signature]*
Name: Christopher J. Miritello
Title: Vice President - Legal

MUELLER COMMERCIAL DE MEXICO

By: *[signature]*
Name: Christopher J. Miritello
Title: Secretary

MUELLER STREAMLINE CO.

By: *[signature]*
Name: Christopher J. Miritello
Title: Vice President - Legal

*[signature]*

Richard J. Land, as and only as
Permanent Receiver of Quick
Fitting, Inc., and not individually

**Exhibit A**