# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

MUELLER BRASS CO.,

    Plaintiff/Counter-Defendant,

v.                                                                                                  No. 2:20-cv-02496-SHL-atc

DAVID CROMPTON,

    Defendant/Counter-Plaintiff.

-------------------------------------------

DAVID CROMPTON,

    Third-Party Plaintiff,

v.

MUELLER INDUSTRIES, INC.,

    Third-Party Defendant.

**DEFENDANT/COUNTER-PLAINTIFF DAVID CROMPTON'S
MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL
(1) MUELLER INDUSTRIES INC. TO PARTICIPATE IN DISCOVERY AND
(2) MUELLER BRASS CO. TO PRODUCE A PRIVILEGE LOG, RESPONSIVE
DOCUMENTS, AND COMPLETE RESPONSES TO INTERROGATORIES**

COMES NOW Defendant/Counter-Plaintiff, David Crompton ("Crompton"), by and through counsel, and submits this Memorandum in Support of Motion to Compel Plaintiff/Counter-Defendant Mueller Brass Co. ("MBC") and Third-Party Defendant Mueller Industries Inc. ("MLI") (collectively, the "Mueller Defendants"), respectfully stating as follows:

## INTRODUCTION

MBC filed this lawsuit last year seeking a payment from Crompton under a Personal Guaranty he gave to Antipodes Acquisitions Limited ("Antipodes") to secure two notes between

Antipodes and Quick Fitting, Inc. ("QFI") (the "Antipodes Loans"). MBC later assumed the Antipodes Loans (which had been secured by QFI and Antipodes in the second order of priority), and a note from JP Morgan (the "JPM Loan") (which had been secured in the first order of priority). These first- and second-priority loans were always 100% secured by QFI's assets, and when QFI entered Receivership in Rhode Island, the payment obligations of Crompton under the Guaranty should have come to an end through the judicial sale of QFI's assets.

Instead of allowing the Receivership to run its course, MBC voluntarily settled its claims—which included the JPM Loan, the Antipodes Loan, and a third loan (in the third order of priority) MBC had extended to QFI—with QFI's Receiver in June 2021. In the recent settlement, MBC received: (1) a $9.5 MM payment from QFI; and (2) a release of liability for all claims QFI had against MBC. Notably, QFI's Receiver had concluded that QFI had meritorious lender liability claims against MBC, and that MBC otherwise faced significant liability for its bad acts that helped drive QFI into receivership.

In light of both QFI's settlement payment (which *exceeds by millions of dollars* the amounts due under the JPM Loan and Antipodes Loans) and QFI's release of liability provided to MBC (the value of which Crompton must be credited to any amounts due under the Guaranty under binding Sixth Circuit precedent), Crompton moved for judgment on the pleadings, or in the alternative, to dismiss on mootness grounds. (ECF No. 70-1 (Memorandum in Support), ECF No. 84 (Reply Memorandum)). Crompton's motion argues that MBC has been made whole through the recent settlement and can no longer show any damages in this case. For its part, MBC in opposition argues (ECF No. 81) that it is entitled to allocate QFI's settlement payment to leave a debt remaining on the Antipodes Notes, but does not address two of Crompton's arguments: (1) that he is entitled to the value of the release because it is something of value provided by QFI to

MBC in exchange for reducing the amount of indebtedness on the Antipodes Notes, *see Wallace Hardware Co., Inc. v. Abrams*, 223 F.3d 382, 406 (6th Cir. 2000) (holding the value of release of liability debtor provided to creditor must be credited to guarantor), and (2) that allocation of the settlement payment in a manner that does not satisfy the Antipodes Loans and which subordinates the loans to MBC's own third-in-priority loan, would violate the terms of the Guaranty itself, *see Crossville, Inc. v. Kemper Design Ctr., Inc.*, 758 F. Supp. 2d 517, 531 (M.D. Tenn. 2010) (discharging guarantor due to fundamental change in the nature of the risk). Crompton's motion is pending.[1]

Although Crompton believes he is entitled to judgment as a matter of law, out of an abundance of caution, Crompton has continued to move forward with discovery, which closes on January 5, 2022. In addition to noticing depositions for later this month (December), Crompton has requested documents and interrogatory responses from the Mueller Defendants, including requests that seek information on a fundamental question in this case: can MBC show that it has any damages given its June 2021 settlement with QFI's Receiver?

Instead of complying in good faith with its discovery obligations, the Mueller Defendants have done the opposite. MLI has refused Crompton's request to produce any documents and provide substantive responses to any interrogatories. To justify its inaction, MLI has taken the position that it is not a proper party to this litigation and simply stated that it is not willing to engage discovery because it believes Crompton's claims will be dismissed. *See supra* at 7–8.

---

[1] Also pending are respective motions by MBC and MLI to dismiss Crompton's counterclaims and third-party claims. (ECF Nos. 66, 67). As discussed below, MLI uses the pendency of its motion as a basis to decline to participate in discovery even though Crompton's discovery extends to MBC's claims against Crompton and MBC's alleged damages, including its attempt to allocate the settlement payment to leave a debt remaining on the debt secured by the Guaranty.

For its part, MBC first moved for a protective order earlier this summer on Crompton's initial discovery requests, claiming they were not relevant to its breach-of-guaranty claim and that MBC would prevail on a motion it planned to file to dismiss Crompton's counterclaim. Magistrate Judge Claxton squarely denied MBC's motion, finding "the questioned discovery items are now within the scope of discovery as they are now relevant to [Crompton's] claims and defenses" and "[i]t would be prejudicial to [Crompton] to deny him currently permissible discovery on the chance that a yet-to-be-filed motion is granted." (ECF No. 62 at 3.)

Despite the Court's ruling, MBC has failed to produce responsive documents and substantive interrogatory response. MBC instead essentially re-asserts the same relevancy objections that Magistrate Judge Claxton rejected and makes sweeping claims of privilege—without providing a privilege log Crompton has requested and MBC had promised in early October would be forthcoming but has failed to provide.[2] For example, MBC has not produced, *inter alia*:

- Documents and other communications, including with MLI, related to its allocation of the settlement payment from QFI, which may help determine the remaining balance of the Antipodes Notes and any amounts due under Crompton's Guaranty, if any;

- Documents and other communications related to the release of liability QFI provided to MBC in the settlement, the value of which must be deducted from any amount Crompton may owe under the Guaranty, *see Wallace Hardware Co.*, 223 F.3d at 406 (guarantors "clearly are entitled to this credit against the amount owed under the Guaranty, since any reduction in [the debtor's] indebtedness, whether through a cash payment or any other

---

[2] MBC undoubtedly will claim that Crompton has not provided a similar log but that position is disingenuous. MBC never requested one from Crompton before the instant dispute, and MBC's itself has asserted that damages and allocation are the key issues in this case (thereby making it difficult to see how any documents withheld by Crompton could be relevant).

4

means, also serves to reduce the [guarantor's] liability under the Guaranty—and this is so even where the reduction is achieved through an agreement to release a claim");

- Internal communications and other documents regarding Crompton's Personal Guaranty itself; and

- A Privilege Log.

Furthermore, MBC's responses to interrogatories are incomplete, evasive and contradict representations made to this Court in previous filings on these issues.

Magistrate Judge Claxton recognized months ago the harm and prejudice to Crompton arising from the Mueller Defendants' baseless objections and improper attempt to self-grant a stay of discovery. As it stands today, MBC has deprived Crompton of the ability to defend himself from the claim by showing the absence of MBC's damages. Crompton therefore brings this motion to compel to seek an order compelling the Mueller Defendants to comply with their discovery obligations and, at a minimum, to produce a privilege log and discovery immediately on the facts and economic ramifications of the settlement (including the value of the release and allocation of the settlement payment).

## STATEMENT OF FACTS

### I. RELEVANT PROCEDURAL BACKGROUND

MBC filed this action on July 10, 2020. (ECF No. 1 "(Compl.").) MBC's Complaint asserts that Crompton, CEO and founder of QFI, breached the provisions of a personal guaranty that he provided to secure two loans between QFI and Antipodes, a New Zealand company owned by one of Quick Fitting's preferred shareholders. (Compl. ¶¶ 21-22.) Prior to the commencement of this litigation, QFI entered Receivership proceedings in the Rhode Island Superior Court. (*Id.* ¶

6.) MBC filed three secured claims—all of which were fully collateralized by QFI's substantial assets—and various unsecured claims in the Receivership.

On May 26, 2021, Crompton filed an Answer, Counterclaim and Third-Party Complaint, adding MLI as a third-party defendant, (ECF No. 50 ("Answer")), which the Mueller Defendants moved to dismiss. Weeks later, MBC elected to negotiate a settlement with QFI's Receiver as to its secured and unsecured debt. In June 2021, the Rhode Island Court presiding over the Receivership entered Final Judgment on its Order authorizing the Receiver to settle with MBC. ("Settlement Order", filed as exhibit in this proceeding at ECF No. 70-2.) The Court approved *only* the aggregate payment of $9,487,500 to MBC and explicitly disavowed any endorsement or approval of an allocation of settlement proceeds that MBC attempted to make to the secured debt MBC held. (*See* Settlement Order ¶ 5.) MBC's self-serving allocation purported to leave a debt remaining on the Antipodes Loan, yet fully paid MBC's other loans out of the order of priority.

In light of MBC's settlement with the Receiver, which included QFI's release of claims against MBC, Crompton filed an Amended Counterclaim and Third-Party Complaint on August 6, 2021. (ECF No. 65.) The Mueller Defendants again sought dismissal of the counterclaims and third-party claims on nearly identical grounds as it did before. (ECF Nos. 66, 67.) Crompton simultaneously objected to the Mueller Defendants' motions and filed a Motion for Judgment on the Pleadings to dismiss MBC's claim, both of which were predicated on Crompton's affirmative defense that MBC's Complaint "may be barred, in whole or in part, by payment or settlement" (Answer at 11, ¶ H) and fails to state a claim under Rule 12(b)(6) (*Id*. at 10, ¶ A)—specifically, MBC's inability to show damages due to the Receivership settlement—and/or alternatively should be dismissed under 12(b)(1) on grounds of mootness for the same reason. (*See* ECF Nos. 70, 71, 72.) As noted, the parties' motions remain pending.

## II. PRIOR DISCOVERY DISPUTE AND MAGISTRATE JUDGE'S ORDER

On April 7, 2021, Crompton served discovery requests on MBC. On April 29, 2021, MBC filed a Motion for a Protective Order seeking to be relieved of from responding to Crompton's discovery. (ECF No. 41-1.) MBC argued that Crompton's requests were overly broad or not relevant because "[i]t is a simple lawsuit" with a "narrow focus" (*Id*. at 8) and "this is a simple breach of a Personal Guaranty action[.]" (*Id*. at 9.) Crompton filed his opposition on June 2, 2021, arguing that the discovery sought was well within the permissible scope articulated by Rule 26(c) because it related directly to the affirmative defenses and claims raised in his Answer and Amended Counterclaim. (ECF No. 52.)

On June 17, 2021, Magistrate Judge Claxton denied MBC's motion (ECF No. 62), rejecting MBC's argument that it had a unilateral right to determine relevancy and to stay discovery:

> [T]he third-party complaint and counterclaim change that analysis. A review of those documents indicates that ***the questioned discovery items are now within the scope of discovery*** *as they are now relevant to the claims and defenses.* ***Plaintiff's only reply to this is its confidence that the third-party complaint and counterclaim will be dismissed. That is not enough to amount to good cause to grant the protective order. Plaintiff proposes staying the decision until a decision is made regarding the validity of the third-party complaint and counterclaim. This suggestion fails because the motion to dismiss those items has not been filed yet and there is no way to predict when the District Court will render its decision***.

(ECF No. 62 ("June 17 Order") at 3 (emphasis added).)

Judge Claxton also noted the firm January 5, 2022 closing of discovery and concluded that it would be prejudicial to Crompton to deny him permissible discovery:

> Further, in her Order Granting Joint Motion to Amend the Amended Scheduling Order and to Extend Deadline to Respond and Second Amended Scheduling Order, Judge Lipman ordered that "[no] further motions to amend this schedule or extend any deadline will be granted." (emphasis in the original) (D.E. # 55) The deadline for completing discovery is January 5, 2022, six months and nineteen days from today. ***It would be prejudicial to Defendant / Third Party Plaintiff to deny him currently permissible discovery on the chance that a yet-to-be-filed motion is granted***.

(*Id*.)

7

### III. MLI'S BLANKET REFUSAL TO PARTICIPATE IN DISCOVEY

Despite Magistrate Judge Claxton's ruling that the Mueller Defendants' "confidence that the third-party complaint and counterclaim will be dismissed … is not enough to amount to good cause to grant the protective order," (June 17 Order at 3), and the Court's rejection of the Mueller Defendants' proposal to stay discovery until its motions to dismiss are decided, MLI unilaterally has decided to refuse to participate in the discovery process. To date, it has not responded to requests related to (1) MBC's claim against Crompton, or (2) Crompton's claims against MLI. Moreover, MLI is long-overdue in sending Initial Disclosures, which were due without request 30 days after service of process pursuant to Rule 26(a)(1)(D).

For instance, on October 14, 2021, Crompton served his First Sets of Interrogatories and Requests for Production on MLI. On November 22, 2021, MLI served its Answers and Responses, attached hereto as **Exhibits A** and **B**. In lieu of complying with discovery rules and without seeking a protective order or stay from this Court, MLI repetitively asserts that it is not a proper party and has no obligation to respond to any of Crompton's Document Requests. For example:

> **REQUEST NO. 28**: Please produce all documents and communications identified, referenced in, forming the basis of, or used in preparation of Your responses to Crompton's interrogatories to MLI.
>
> **RESPONSE**: Mueller Industries is not a proper party to this litigation and asserts that no response to this Request is required. There are no documents to produce.

Ex. B at 17; *see also* the first sentence of each of MLI's responses. Likewise, MLI's responses to Crompton's Interrogatories simply state: "Mueller Industries is not a proper party to this litigation and asserts that no response to this Interrogatory is required…". *See* Ex. A at 5-7.

### IV. MBC'S IMPROPER OBJECTIONS AND DEFFICIENT WRITTEN RESPONSES AND DOCUMENT PRODUCTION

On October 14, 2021, Crompton served his Second Set of Interrogatories and Requests for Production on MBC, most of which were aimed squarely at the issues of Crompton's affirmative

8

defenses, MBC's alleged damages and MBC's allocation of the Receivership Settlement payment in May-June 2021. On November 12, MBC requested an extra seven days to respond to Crompton's second sets of discovery requests, which Crompton accommodated given the then-pendency of the Court's entry of the parties' Protective Order.

On November 22, MBC served its (1) Supplemental Responses to Crompton's First Set of Interrogatories and Requests for Production of Documents and (2) its Responses to Crompton's Second Set of Interrogatories and Requests for Production, attached hereto as **Exhibits C–F**. MBC also produced approximately 1,500 pages of (largely duplicative) documents with subdividers indicating the production was responsive only to Document Request Nos. 3, 4 and 8.[3]

MBC's written responses are largely a recitation of baseless objections and arguments that Magistrate Judge Claxton rejected five months ago, including that this dispute is a "straightforward case for breach of the Personal Guaranty" and "the relevant inquiry is narrow" are improper objections and provide no legal basis for refusing to cooperate with discovery requests for relevant information as ordered in this case. *See*, *e.g.*, Ex. D at 5, 11-12, Ex. E at 5, 9. MBC also unilaterally attempts to limit the scope of discovery on the basis that Crompton lacks "standing." For instance, paragraph 9 of MBC's General Objections to Crompton's second set of Interrogatories states:

> Mueller Brass generally objects to any Interrogatory that seeks information that is not relevant to the question of whether Mueller Brass may enforce Defendant Crompton's Personal Guaranty. Each of the Interrogatories herein seeks information on matters that are not relevant or material to this breach of guaranty case. Nothing sought herein is relevant in this straightforward case for breach of the Personal Guaranty.... As such, the relevant inquiry is narrow.... Mueller Brass' allocation of the settlement payment in the Receivership was entirely discretionary and Crompton has no standing challenge that

---

[3] MBC's November 22 responses failed to provide objections or responses to Requests Nos. 29–35. After Crompton pointed out the failure to timely object, MBC, on November 29, purported to serve "Revised Responses" to Request Nos. 29–35, attached hereto as **Exhibit G**. MBC's counsel described the omission as a "clerical error." *See Wylie v. TransUnion, LLC,* No. 3:16-CV-102, 2017 WL 4357981, at *7 (W.D. Pa. Sept. 29, 2017) (noting that "the 'clerical error' excuse is wholly incapable of verification by the Court."); *Blackmond v. UT Medical Group, Inc.*, 2003 WL 22385678, at *1 (W.D. Tenn. Sept. 17, 2003) ("As a general rule, when a party fails to object timely to interrogatories, production requests, or other discovery efforts, objections thereto are waived."). Crompton also notes that MBC's counsel later characterized the failure as an "oversight" during the parties' subsequent meet and confer call.

> allocation and, therefore, any discovery on the matter is irrelevant and beyond the scope and needs of the case.

Ex. E at 3 ¶ 9.  MBC's General Objections to Crompton's second set of document requests includes nearly identical language:

> ....As such, the relevant inquiry is narrow.... As set forth more fully in Mueller Brass' pending Motions to Dismiss and other filings —which are incorporated herein by reference— Crompton has no standing to raise any claim or defense belonging to the principal obligor Quick Fitting and, therefore, any documents sought in furtherance of this subject matter is entirely irrelevant.

Ex. F at 3 ¶ 9.

### V.   CROMPTON'S DEFICIENCY LETTER AND PARTIES' MEET AND CONFER

On November 26, four days after receiving MBC's deficient responses and production, Crompton's counsel sent MBC's counsel a letter detailing the said deficiencies, attached hereto as **Exhibit H**.  Crompton's deficiency letter includes a detailed chart that shows that MBC continues to make improper objections and assert increasingly contradictory formulations to evade Crompton's discovery requests, many of which are squarely aimed at the unquestionably relevant issue of MBC's alleged damages and Crompton's affirmative defenses.  Ex. H at 3-9.

At a November 30 conference call among counsel for the parties, MBC agreed that its damages and the allocation issue are pivotal for the disposition of this case. The Mueller Defendants' counsel followed up this conference with a six-page letter, attached hereto as **Exhibit I**, largely criticizing Crompton and his counsel, and indicating that the Mueller Defendants would continue to withhold production of responsive documents. The Mueller Defendants' threshold stated basis for refusing to comply was: "It is highly likely that Crompton's claims will be dismissed. Crompton is simply not entitled to what he seeks, and Mueller Brass is confident that its motions will be granted." Ex. I at 2. The Mueller Defendants thus unilaterally concluded: "As such, we are not willing to engage in enormously expensive and time-consuming discovery on

10

irrelevant matters." *Id*. at 4. More troubling, the Mueller Defendants ***admit their production was deficient*** and it did not produce all responsive documents, conceding "the number of responsive non-privileged documents [regarding the Receivership settlement and allocation of Receivership proceeds] appears to be minimal." *Id*. at 4. At no point did the Mueller Defendants seek a stay of discovery in this action based on the pending dispositive motions or renew a motion for protective order after Judge Claxton previously denied such relief.

## APPLICABLE LEGAL STANDARD

As this Court is aware, the scope of discovery is governed by Federal Rule of Civil Procedure 26, which provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). "The scope of discovery is, of course, within the broad discretion of the trial court." *Lewis v. ACB Business Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998). It is "of paramount importance that litigants be accorded the authority to seek out relevant evidence that they have been granted by the federal rules." *Farley v. Farley*, 952 F. Supp. 1232, 1239 (M.D. Tenn. 1997).

Discovery is supposed to proceed with minimal involvement of the Court. It is not a "court's function to drag a party kicking and screaming through discovery." *Fed. Deposit Ins. Corp. v. Butcher*, 116 F.R.D. 196, 203 (E.D. Tenn. 1986) (internal quotes omitted), *aff'd*, 116 F.R.D. 203 (E.D. Tenn. 1987). If a party fails to respond to an interrogatory under Rule 33 or a request for production under Rule 34, or does so deficiently, and the parties have conferred in a good-faith attempt to resolve the dispute, the opposing party may file a motion to compel discovery. Fed. R. Civ. P. 37(a)(1), (3)(B)(iii)-(iv). This is especially true where a party's disclosure, answer, or response is "evasive or incomplete," which "must" be treated as a failure to

11

respond. Fed. R. Civ. P. 37(a)(4). And, as Rule 1 instructs, the Federal Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

## ARGUMENT

### I. THIS COURT SHOULD COMPEL MBC TO PRODUCE ALL RESPONSIVE DOCUMENTS AND RESPOND FULLY TO INTERROGATORIES

#### A. MBC's Interrogatory Answers and Document Production Are Deficient

MBC has declined to produce all responsive documents in its possession and respond to all of Crompton's interrogatories on the basis that it "is confident that its motions [to dismiss] will be granted." Ex. I at 4. Parties are not entitled to grant themselves a self-imposed stay of discovery and MBC's positions lack a legitimate legal basis. In fact, Magistrate Judge Claxton squarely rejected this position in an earlier ruling in this case. *See* June 17 Order at 3; *see also Clippinger v. State Farm Mut. Auto. Ins. Co.*, No. 220CV02482TLPCGC, 2021 WL 1894821, at *1 (W.D. Tenn. Apr. 22, 2021) ("the fact that a party has filed a case-dispositive motion is usually deemed insufficient to support a stay of discovery"). In addition, regardless of whether MBC's motion to dismiss Crompton's counterclaims, Crompton is entitled to discovery to defend himself from MBC's claim and prove a lack of damages.

Equally so, MBC cannot decide unilaterally which documents and information are relevant to this case, and which are not. *United States v. Bd. of Trade of City of Chicago, Inc.*, 18 Fed. R. Serv. 2d 318 (N.D. Ill. 1973) ("The proposition that an adverse litigant may not unilaterally determine the scope of discovery needs no citation.... Plaintiff may no more dictate the range of Defendant's discovery by mere fiat than it may limit it by its present position."); *see also Hunter v. International Systems & Controls Corp.*, 56 F.R.D. 617, 622 (W.D. Mo. 1972) (court held that "[defendant's] refusal to give the information on the ground that the defendant unilaterally and

12

without seeking a ruling of the Court concluded 'adjusted gross profit' had no meaning in regard to these sales and contracts constituted a willful obstruction of discovery[.]").

Here, MBC must—at the very minimum—provide responses to Interrogatory Nos. 14–18 immediately. The relevance and discoverability of information regarding the individuals involved in the Receivership settlement and allocation of proceeds (No. 14); valuation methodology and calculations regarding the release of QFI claims (No. 15), the "litigation risk" discount applied to the guaranteed Antipodes Loans (No. 16), valuation methodology and calculations regarding the "tax and accounting purposes" for MBC's allocation of settlement proceeds (No. 17), and MLI's SEC reporting of QFI's secured debt and its settlement payment (No. 18) is beyond dispute, and this Court should order MBC to provide complete, accurate answers to each of these Interrogatories.

In addition. MBC only has produced documents in response to three document requests, Nos. 3, 4 and 8. Irrespective of MBC's subjective view of relevance, it must supplement its production and provide documents in response to Crompton's remaining requests. *See Medtronic Sofamor Danek, Inc. v. Michelson*, No. 01-2373-GV, 2002 WL 33003691, at *5 (W.D. Tenn. Jan. 30, 2002) ("The Federal Rules of Civil Procedure do not recognize irrelevance as a privilege or an objection that warrants redaction…. The relevance of a document is subjective, and according to the Federal Rules, should be construed broadly."). In particular, MBC must produce documents responsive to Request Nos. 19, 23–24, 26 and 28, which seek all documents and communications related to: the Personal Guaranty (No. 19), the Intercreditor and Subordination Agreement which confirmed the order of priority of MBC's secured claims (No. 23), MBC's efforts to apply its secured claims toward a credit bid in the Receivership (No. 24), MBC's claims for post-petition interest in the Receivership (No. 26), and the Receivership Settlement (No. 28).

Consistent with Crompton's deficiency letter and the foregoing, this Court should order MBC to comply with its discovery obligations by immediately supplementing its document production and responses to Crompton's interrogatories, and providing a privilege log which fully meets the requirements of Rule 26, as discussed *supra*, at 15-16.

### B. This Court Should Compel MBC To Produce Documents Related To Its Purported Allocation of the Settlement Payment and the Value of Its Receipt of QFI's Release of Claims Against MBC

#### 1. This Court already has recognized that the Receivership Settlement is relevant

Early in this case, the Court has observed that "the receivership [of QFI] may affect the final damages in this case," and "if the receivership changes the amount of the damages in this case, that change will be revealed long before the determination of damages in this case, if any exist." ECF No. 47 (Order, dated May 12, 2021) at 8. It therefore is beyond dispute that the settlement that MBC voluntarily reached with QFI's Receiver is relevant as it has the potential to reduce MBC's damages (as Crompton has argued). *See* Fed R. Civ. P. 26(a)(1)(A)(iii) (requiring parties to disclose "a computation of each category of damages claimed by the disclosing party ... [and] make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered"); *Pravak v. Meyer Eye Grp., PLC*, No. 2:07-2433-MLV, 2009 WL 10664851, at *9–10 (W.D. Tenn. Oct. 22, 2009) ("[Defendant] seeks to discover any documents related to damage calculations, information that [plaintiff] is required to disclose to [defendant] as part of his Rule 26(a)(1) initial disclosures. …. [plaintiff] is obligated to not only respond with but also *disclose*, prior to the initiation of formal discovery procedures, all computations *unless* they are privileged.") (emphasis in original).

### 2. **MBC should produce responsive documents immediately and prior to the upcoming depositions**

Despite having had the obligation to produce all responsive documents, MBC has admitted in recent correspondence that responsive documents remain. *See* Ex. I at 4 (stating in response to Crompton's deficiency letter "the number of responsive non-privileged documents appears to be minimal"). Depositions currently are scheduled for December 21 and 22 and MBC should be ordered to produce those documents well before that date.

### 3. **This Court Should Compel the Mueller Defendants to Provide a Privilege Log Immediately**

To the extent the Mueller Defendants decline to produce any documents—particularly those related to allocation and the value of the release it obtained from QFI in the Receivership Settlement—on the basis of any privilege, the Mueller Defendants should be ordered to provide a privilege log immediately. In his requests for production, attached hereto as **Exhibit J**, Crompton specifically stated that should MBC claim privilege, it should produce a log and for each such document:

   a. identify and describe each such document by date, author, and recipient;

   b. identify each person, and his or her job title, (other than stenographic or clerical assistance) participating in the preparation of the document;

   c. identify each person to whom the contents of the document have been communicated by copy, exhibition, reading, or summarization;

   d. provide a brief summary of its contents;

   e. state the privilege or privileges in sufficient detail so that the United States District Court, or other judicial entity, may adjudicate the validity of the claim. You are required to set forth as to any document for which privilege, attorneys' work product or trial preparation materials is claimed: the nature of the privilege claimed, the grounds relied upon for the claim of privilege (with specificity), the person who claims the privilege and whether there has been any waiver of the privilege. If there has been a waiver, provide a detailed description of the circumstances surrounding the waiver[.]

Ex. J at 5-6. *See First Horizon Nat'l Corp. v. Houston Cas. Co.*, No. 2:15-CV-2235-SHL-DKV, 2016 WL 5867268, at *5 (W.D. Tenn. Oct. 5, 2016) ("This court has previously held that to comply with Rule 26, the privilege log should contain the date and time of the document, the type of communication, the author, the addressee(s), identification of the recipients, the privilege asserted, and an explanation of the privilege claimed.").

In an October 6, 2021, email, attached hereto as **Exhibit K**, MBC promised both to produce responsive documents and to provide a privilege log. To date, no privilege log has been provided, and given MBC's intransigence and the upcoming depositions, Crompton cannot afford to rely on MBC's representations that it may provide one in the future.

## II.     THIS COURT SHOULD COMPEL MLI TO PARTICIPATE IN DISCOVERY

MLI has refused to produce a single document in this case or provide a substantive written response. As noted, MLI's position that it unilaterally may decide that it is not a proper party and need not comply with discovery has no basis in the law. "[E]ven with a dispositive motion pending, a party cannot unilaterally decide that it will not participate in discovery." *Davis v. Northpoint Senior Servs.*, No. 3:14-CV-106-PLR-HBG, 2015 WL 8752068, at *2 (E.D. Tenn. Dec. 14, 2015) ("Northpoint offers no law in support of its assertion that it 'was, in fact, improperly named in this lawsuit, and is not required to respond and produce documents', and the Court finds that this assertion is contrary to the Federal Rules of Civil Procedure."); *see also Bd. of Trade of City of Chicago, Inc.*, 18 Fed. R. Serv. 2d at 318.

MLI's position is particularly egregious because Crompton's discovery requests address not only Crompton's third party claim against MLI, but ***MBC's claim against Crompton himself***. Regardless of whether MLI's motion to dismiss third party claims is granted, the information Crompton seeks from MLI is necessary for Crompton to defend against MBC's breach-of-guaranty

claim and relevant to MBC's damages (if any). In fact, Document Requests 14–16, 19–20, 22–24 and Interrogatories 1–5 seek specific information related to damages. *See* Exs. A and B. MLI certainly has no basis for its failure to serve Rule 26(a)(1) disclosures. *See* Fed. R. Civ. P. 26(a)(1)(D).

Furthermore, in the Receivership, MBC's counsel claimed it needed an allocation included in the settlement with QFI for "tax and accounting" purposes. As it turns out, that allocation was for MLI, and the allocation was directed by MLI, not MBC, as shown in MLI's SEC filings reporting the 2020 the purchase of the QFI notes and the 2021 Receivership payment on the QFI notes. *See* MLI Form 10-Q for Nine Months Ending Sept 26, 2020, attached hereto as **Exhibit L**, at 33 (reporting "Cash Flows from Investing Activities" as follows: "The major components of net cash used in investing activities during the nine months ended September 26, 2020 included … **the issuance of notes receivable of $9.2 million**.")[4]; *cf*. MLI Form 10-Q for Nine Months Ending June 26, 2021, attached hereto as **Exhibit M**, at 33 (Reporting "Cash Flows from Investing Activities" as follows: "The major components of net cash used in investing activities during the six months ended June 26, 2021 included (i) capital expenditures of $18.0 million and (ii) $13.9 million for the purchase of H&C, net of cash acquired. **These uses were partially offset by (i) payments received on notes receivable of $8.5 million**[.]").[5] Although the Receivership Court rejected MBC's proposed allocation, MBC continues to rely upon it to claim a deficiency on the Antipodes Loans and MBC's reliance on said allocation appears to be reflected in MLI's SEC filings. This information from MLI is plainly discoverable.[6]

---

[4] Also available at https://muellerindustriesinc.gcs-web.com/static-files/d822fb61-f896-4fff-ba79-58fea0d0f398
[5] Also available at https://muellerindustriesinc.gcs-web.com/static-files/7fd7168d-f8cd-4d04-93e1-c7d6c4d49cc2
[6] Crompton also notes that despite settling with QFI's Receiver and receiving a payment that satisfies the debt remaining on the Antipodes Loans (in full or in part), MBC has not supplemented/amended its required disclosures under Rule 26(a). To the extent that document is not received promptly. Crompton requests this Court to order MBC to supplement its Rule 26 disclosures. MLI, for its part, has not complied with the rule and filed any disclosure, and should be ordered to do the same.

Furthermore, even leaving aside whether MLI is a proper third-party defendant in this case, the record shows that officers of MBC often served concurrently of MLI, (ECF No. 29-1, ¶ 4 (declaration showing MBC senior officer concurrently held CFO position in MLI)), and Crompton engaged in discussions with many MLI officers, including its CEO (ECF No. 65 ¶¶ 24-27, 29-30) and President (*id.* ¶ 30). Given that MLI participated and directed the conduct that forms the basis for all of Crompton's claims (ECF 65, ¶¶ 21, 24) and MLI was substantively involved in the conduct that forms the basis of MBC's damages claim, MLI has no basis to unilaterally exempt itself from discovery.

## **CONCLUSION**

The Mueller Defendants' position suggests an utter indifference to discovery rules and the Magistrate's June 17 Order. Discovery is set to close on January 5, and the Mueller Defendants' delayed and deficient discovery responses have significantly prejudiced Crompton. MBC and MLI are obligated under the rules make a full production of responsive documents and provide complete, non-evasive written responses to Crompton's discovery requests. Thus far they have refused to do so.  Therefore, this Court should enter an Order compelling MBC to provide complete answers to Crompton's Interrogatories (and in particular Nos. 14–18) and produce all documents responsive to Crompton's Document Requests (and in particular Nos. 19, 23–24, 26, and 28).  The Court should order MLI likewise to answer Crompton's Interrogatory Nos. 1–5 and to produce the documents requested in Crompton's Document Request Nos. 1–2, 8–9, 11, 13–16, 19–24 and 26. The Court should order both Mueller Defendants to produce a privilege log in advance of the depositions currently scheduled for December 21 and 22.  MLI Crompton also respectfully seeks costs in bringing this motion to compel. Fed. R. Civ. P. 37(a)(4);  *Power & Telephone Supply*

18

*Company, Inc. v. Suntrust Banks*, Inc., 2004 WL 784533 (W.D. Tenn. 2004) (citing Fed. R. Civ. P. 37(a)(4)).

        Respectfully submitted,

        /s/Lawrence J. Laurenzi
        Lawrence J. Laurenzi (BPR No. 009529)
        Sarah Stuart (BPR No. 035329)
        BURCH, PORTER & JOHNSON, PLLC
        130 North Court Avenue
        Memphis, Tennessee 38103
        Telephone: (901) 524-5000
        Facsimile: (901) 524-5024
        llaurenzi@bpjlaw.com
        sstuart@bpjlaw.com

        Michael J. Sullivan (MA No. 487210)
        Nathan P. Brennan (MN No. 389954)
        *Admitted pro hac vice*
        ASHCROFT LAW FIRM
        200 State Street, Floor 7
        Boston, MA 02109
        Telephone: (617) 573.9400
        Facsimile: (617) 933-7607
        msullivan@ashcroftlaw.com
        nbrennan@ashcroftlaw.com

        *Attorneys for David Crompton*