# EXHIBIT H



**Via email:** <u>agreer@glankler.com</u>, <u>lmontgomery@glankler.com</u>

Aubrey Greer
Lawrence Montgomery
GLANKLER BROWN PLLC
6000 Poplar Ave, Suite 400
Memphis, TN 38119

RE: Deficiencies in Mueller Brass Co.'s and Mueller Industries, Inc.'s Discovery Responses and Document Production
*Mueller Brass Co. v. David Crompton*, 2:20-cv-02496-SHL-atc (W.D. Tenn. 2020)

Dear Mr. Greer:

As you know, we represent Defendant/Counterclaim and Third Party Plaintiff David Crompton in the above-referenced matter. I write to address the numerous deficiencies in Plaintiff/Counterclaim Defendant Mueller Brass Co.'s ("MBC") written discovery responses and Third Party Defendant Mueller Industries, Inc.'s ("MLI") unilateral refusal to participate in discovery in any meaningful way. On November 22—more than five months since Magistrate Judge Claxton ordered discovery to proceed and more than five weeks since Crompton served his second set of discovery requests—you and your clients served discovery responses that demonstrate a blatant disregard for the requirements of Rules 26, 33, and 34, the June 17, 2021 Magistrate's Order (ECF 62), and the rights of David Crompton to obtain discovery on the core issues to be decided in this case.

Your responses show that you and your clients have decided to ignore the Magistrate's Order and to continue to deny Crompton meaningful discovery of issues central to this case, including Crompton's affirmative defenses predicated on the Receivership Settlement, the basis for and calculation of MBC's alleged damages in light of the Receiver's payment, and the allocation issue that the Rhode Island court explicitly left to be decided here in Tennessee. These issues have been the subject of significant motion practice and their relevance is beyond dispute. The Rules of Procedure plainly allow Crompton to obtain discovery concerning the issues of defenses, damages, and allocation.

Discovery is set to close on January 5, and your clients' delayed and deficient discovery responses have significantly prejudiced our client. MBC and MLI must make a full production of responsive documents and provide complete, non-evasive written responses to Crompton's discovery requests by 5:00 p.m. CST on December 1 (including any privilege log that includes a description of the document, all recipients, and specific basis for claiming privilege). Your clients have had more than sufficient time, and have more than sufficient resources and ability, to provide proper responses and productions by that date. We are open, of course, to discuss this matter and would propose a call for the afternoon of Monday, November 30. However, given our prior dialogues and MBC and MLI's prior false assurances to produce written responses and documents per the Magistrate's Order, we will have no choice but to file a motion to compel immediately if a full production and complete responses are not received by December 1.



1. **<u>MBC's objections and responses defy the Magistrate's June 17 Order</u>.**

As discussed below, your responses to Crompton's discovery requests indicate that your clients wrongly believe they can disregard any such request by simply declaring, unilaterally, that "this is a straightforward case for breach of the Personal Guaranty," and "the relevant inquiry is narrow," etc. Many of your other written objections and responses are evasive, incomplete, riddled with improper argumentative content, and, in some cases, patently absurd. MBC's document production reflects the same refusal to participate in discovery.[1]

As you know, on June 2, 2021, MBC filed a Motion for Protective Order (ECF No. 41) seeking to be relieved from responding to all of Crompton's written discovery. On June 17, 2021, Magistrate Judge Claxton denied MBC's motion (ECF No. 62), noting the firm January 5 closing of discovery and concluding that it would be prejudicial to Crompton to deny him permissible discovery:

> [T]he third-party complaint and counterclaim change that analysis. A review of those documents indicates that *the questioned discovery items are now within the scope of discovery as **they are now relevant to the claims and defenses***.
> \*\*\*
> Further, in her Order Granting Joint Motion to Amend the Amended Scheduling Order and to Extend Deadline to Respond and Second Amended Scheduling Order, Judge Lipman ordered that "[no] further motions to amend this schedule or extend <u>any</u> deadline will be granted." (emphasis in the original) (D.E. # 55) *The deadline for completing discovery is January 5, 2022, six months and nineteen days from today.* **It would be prejudicial to Defendant / Third Party Plaintiff to deny him currently permissible discovery** *on the chance that a yet-to-be-filed motion is granted*.

June 17 Order at 3 (emphasis added).

On October 14, 2021, Crompton served his Second Set of Interrogatories and Requests for Production on MBC, most of which were aimed squarely at the issues of Crompton's affirmative defenses, MBC's alleged damages and MBC's allocation of the Receivership Settlement payment in May 2021. On November 12, you requested an extra seven days to respond to Crompton's second sets of discovery requests, which we were willing to accommodate, particularly given the pendency of the Court's entry of the parties' Protective Order.

On November 22, MBC served its (1) Supplemental Responses to Crompton's First Set of Interrogatories and Requests for Production of Documents and (2) its Responses to Crompton's Second Set of Interrogatories and Requests for Production. Contrary to the Magistrate Judge's Order, your earlier representations and a good-faith effort to comply with discovery rules, MBC's responses are largely a recitation of baseless objections and arguments that the Magistrate rejected five months ago.

---

[1] In the interests of providing specificity, we will focus on MBC's responses and document production. This assessment of MBC's particular discovery failures can be readily applicable to MLI's deficient responses and continuing denial that it is a party to this lawsuit and must comply with all rules governing same.



In addition, MBC's apparent unilateral attempt to limit the scope of discovery on the basis that Crompton lacks "standing" is baseless. For instance, MBC's paragraph 9 of MBC's General Objections to Crompton's Interrogatories states:

> Mueller Brass generally objects to any Interrogatory that seeks <u>information that is not relevant to the question</u> of whether Mueller Brass may enforce Defendant Crompton's Personal Guaranty. Each of the Interrogatories herein seeks information on <u>matters that are not relevant or material</u> to this breach of guaranty case. <u>Nothing sought herein is relevant</u> in this straightforward case for breach of the Personal Guaranty…. As such, <u>the relevant inquiry is narrow</u>…. Mueller Brass' allocation of the settlement payment in the Receivership was entirely discretionary and <u>Crompton has no standing challenge that allocation</u> and, therefore, <u>any discovery on the matter is irrelevant and beyond the scope and needs of the case</u>.

MBC's General Objections to Crompton's second set of document requests includes nearly identical language:

> ….As such, <u>the relevant inquiry is narrow</u>…. As set forth more fully in Mueller Brass' pending Motions to Dismiss and other filings —which are incorporated herein by reference— <u>Crompton has no standing</u> to raise any claim or defense belonging to the principal obligor Quick Fitting and, <u>therefore, any documents sought in furtherance of this subject matter is entirely irrelevant</u>.

MBC's self-serving belief that Crompton does not have standing and continued recitation of the judicially rejected notion that this dispute is a "straightforward case for breach of the Personal Guaranty" and "the relevant inquiry is narrow" are improper objections and provide no legal basis for refusing to cooperate with discovery requests for relevant information as ordered in this case. MBC, of course, has no right to unilaterally dictate the scope of discovery in this manner. *United States v. Bd. of Trade of City of Chicago, Inc.*, 18 Fed. R. Serv. 2d 318 (N.D. Ill. 1973) ("The proposition that an adverse litigant may not unilaterally determine the scope of discovery needs no citation…. Plaintiff may no more dictate the range of Defendant's discovery by mere fiat than it may limit it by its present position."). Indeed, MBC's position suggests utter indifference—bordering on contempt—to the Magistrate's June 17 Order.

2. **<u>MBC's objections and responses to Interrogatory Nos. 14–18 and Document Request Nos. 19, 23–24, and 26–28 are baseless and improper</u>.**

Throughout its written responses, MBC continues to make improper objections and assert increasingly contradictory formulations to evade Crompton's discovery requests, many of which are squarely aimed at the unquestionably relevant issue of MBC's alleged damages and Crompton's affirmative defenses.

| **Crompton's Requests** | **MBC's Responses** | *Remarks / Requests* |
|---|---|---|
| **Interrog. No. 14:** Please identify all MBC and/or MLI personnel involved in the negotiations, analysis, valuation, and/or approval of the Receivership Settlement, | **Response:** Mueller Brass objects to this Interrogatory as it constitutes multiple discreet requests couched as a single interrogatory. Mueller Brass objects as the Interrogatory asks Mueller Brass to answer on behalf of a third party, which | *MBC does not object to the relevance of the settlement or allocation information sought by Interrogatory No. 14. MBC indicates that it has* |



| | | |
|---|---|---|
| including the determination of the purported allocation of settlement proceeds among MBC's secured claims, and describe the role of each individual identified. | Mueller Brass is not required to do. Mueller Brass further objects to the Interrogatory as it seeks information protected by the attorney-client and mediation privileges. Without waiving any objection, <u>Mueller Brass would state that allocation of the Receivership settlement proceeds was an outgrowth of Mueller Brass' privileged and confidential communications with in-house and outside counsel during the confidential mediation process.</u> The identities of those who participated in the Receivership on behalf of Mueller Brass are contained within the records of the Receivership, in which Crompton directly participated, and are therefore already available to him. | *responsive—albeit privileged—communications in its possession. The allocation decision is undeniably relevant to the claims, defenses, alleged damages, and scope of issues to be decided in Tenn. Any such nonprivileged communications must be produced, with redactions if warranted, without delay.* |
| **Interrog. No. 15**: Please state the financial value (or range thereof) You and MLI attributed to Quick Fitting's release of claims in the Receivership Settlement. | **Response:** Mueller Brass objects as the Interrogatory asks Mueller Brass to answer on behalf of a third party. Without waiving any objection, Mueller Brass valued its secured claims in the Receivership consistent with the dollar amounts set forth in the May 5, 2021 Petition to Compromise filed in the Receivership by the Receiver. <u>Mueller Brass did not expressly ascribe (or attempt to ascribe) any specific value to Quick Fitting's release of claims</u>. Mueller Brass and Quick Fitting ultimately settled for $9,487,500.00. Mueller Brass is entitled to seek the deficiency between its secured claims and the ultimate settlement payment from Crompton due to his status as a guarantor of the relevant Quick Fitting debt. | *MBC does not object to the relevance of the financial value that could be imputed to the release, but simply denies that MBC ascribed (or even attempted to ascribe) any value to the release.*<br><br>*This response is demonstrably false and cannot be reconciled with MBC's prior representations to this Court.* |
| **Interrog. No. 16:** Please describe the valuation methodology and provide the calculations for the allocation of Receivership Settlement proceeds in light of the "litigation risk" as represented on page 4 of "RESPONSE OF MUELLER BRASS CO. TO INTERESTED PARTY | **Response:** Mueller Brass objects to this Interrogatory as the document to which Crompton refers was written by counsel, not by Mueller Brass, and Mueller Brass is not qualified to speculate on the subjective meanings ascribed by counsel to the language of that document. Furthermore, the referenced document appears to set forth the rationale for counsel's statements and therefore speaks for itself. <u>Mueller Brass further objects as</u> | *MBC's recitation of an obsolete, rejected relevance objection is improper.*<br><br>*MBC's claim to be unaware of any "valuation methodology" or "calculations" (1) is inconsistent with MBC's efforts to "maximize its* |



| | | |
|---|---|---|
| DAVID CROMPTON'S OBJECTION TO RECEIVER'S PETITION TO COMPROMISE CLAIMS OF MUELLER BRASS CO." filed in the Receivership on/around May 14, 2021 and included in the record of this Action at ECF No. 70-6. | the information sought is not relevant or material to Mueller Brass' claim for breach of the Personal Guaranty and therefor the Request exceeds the scope of discovery in this matter. Without waiving any objection, Mueller Brass states that it is not aware of any "valuation methodology" or "calculations" to describe, and Mueller Brass is unclear as to what Crompton is referring in any event. Mueller Brass attempted to maximize its recovery of its secured claim in connection with the Receivership proceedings. | *recovery" and (2) is refuted by MBC's representations to this Court.* |
| **Interrog. No. 17:** Please describe the valuation methodology and provide the calculations for the allocation of Receivership Settlement proceeds in light of the "tax and accounting purposes" referenced by MBC's counsel during the May 17, 2021 hearing before the Rhode Island Superior Court, the transcript for which is included in the record of this Action at ECF No. 70-7 at PageID 1132. | **Response:** Mueller Brass objects to this Interrogatory as the statement referenced was made by counsel, not by Mueller Brass. Mueller Brass further objects as it asks Mueller Brass to speculate on tax and accounting matters for which it is not qualified. Without waiving any objection, Mueller Brass states that it is not aware of any "valuation methodology" or "calculations" to describe. A recovery from a settlement in the Receivership needed to be properly recorded on Mueller Brass' books and records and, Mueller Brass understood that an allocation of settlement proceeds was required for that purpose. | *MBC simultaneously (1) objects to the alleged speculation required to answer Interrogatory No. 17, (2) claims to be unaware of any "valuation methodology" or "calculations", and yet (3) affirms the settlement recovery was "properly recording" of the settlement recovery in MBC's books and records. The internal contradictions of this response render it facially improper.* |
| **Interrog. No. 18:** Please provide an explanation for the discrepancy between the $9,487,500 amount received by MBC in the Receivership Settlement and the $8.5 million figure reported on page 33 of MLI's Form 10-Q for period ending June 26, 2021. | **Response:** Mueller Brass objects to this Interrogatory as it asks Mueller Brass to speak on behalf of a third party. Mueller Brass further objects as, even if it was proper to answer this request, the Interrogatory exceeds the scope of discovery in this cause as the information sought is not material or relevant to this simple breach of guaranty case and has no potential to make any material fact in dispute (of which there are none) more or less likely to be true. Without waiving any objection, Mueller Brass states that the $8.5 Million figure reported in the Statement of Cash Flows in the referenced Form Q-10 refers to the amount of the | *MBC's recitation of an obsolete, rejected relevance objection is not proper.*<br><br>*MBC states that the settlement payment, the allocation, and other elements of its secured claims were included in MLI's mandatory 10-Q reporting. However, in the proceeding responses, MBC claims to be unaware of any "valuation methodology"* |



| | | |
|---|---|---|
| | total settlement recovery that was <u>allocated to the principal balance owed across Mueller Brass' various loans to Quick Fitting</u>. It does not, however, reflect the settlement proceeds that related to the accrued interest, penalties, and attorneys' fees, which were also recoverable and therefore components of Mueller Brass' secured claim. <u>Those items are reported elsewhere on the financial statements.</u> | *or "calculations" applied to the same settlement recovery and allocation.* |
| **Doc. Request No. 19:** Please produce all documents and communications related to the Personal Guaranty at issue in this Action. | **Response:** Mueller Brass objects to this Request as vague and ambiguous as it is unable to ascertain what qualifies a document as being sufficiently "related" to the Personal Guaranty to warrant production hereunder. Mueller Brass further objects as this Request is inherently overbroad, unduly burdensome, and beyond the scope of discovery in this case. Mueller Brass should not be forced to undertake the time and expense of locating every single document that potentially references or otherwise arises out of the Personal Guaranty. Mueller Brass further objects as documents potentially responsive to this Request are already in Crompton's possession or otherwise available to him through another source; and Mueller Brass' document production, and supplement thereto, related to Crompton's First Set of Requests for Production likely contain documents potentially responsive to this Request. <u>As it has from the start, Mueller Brass asserts that the only material and relevant document is the Personal Guaranty itself, a document Crompton has already admitted he signed and failed to pay under.</u> | *The Personal Guaranty is the reason this case exists, and MBC's objections, including its obsolete relevance objection, provide no valid grounds for withholding any responsive documents or communication.*<br><br>*Further, MBC's own Document Request No. 7 to Crompton is similarly scoped: "Please produce all documents and communication related to your Personal Guaranty, including all communication regarding your liability under your Personal Guaranty for the Antipodes Loans."*<br><br>*MBC has no basis for withholding any responsive documents on grounds of irrelevance, including documents generated in the Receivership.* |
| **Doc. Request No. 23:** All documents and communications related to the Intercreditor & Subordination Agreement | **Response:** Mueller Brass objects as documents potentially responsive to this Request are already in Crompton's possession —including the Intercreditor & Subordination Agreement which | *MBC's recitation of an obsolete, rejected relevance objection is improper and provides no grounds for withholding* |



| | | |
|---|---|---|
| described in paragraphs 49–52 of Crompton's Counterclaims. | Crompton himself filed in the case— or otherwise available to him through another source; and Mueller Brass' document production, and supplement thereto, related to Crompton's First Set of Requests for Production likely contain documents potentially responsive to this Request. <u>Crompton seeks documents related to counterclaims which he has no standing to bring and, therefore, any documents sought in furtherance of those claims, are immaterial and their production is by definition overly burdensome</u>. Mueller Brass further objects as the Request seeks information protected by the attorney-client privilege. <u>None of the documents requested have any potential to make it more or less likely that Crompton breached the Personal Guaranty</u>. | *any responsive documents.* |
| **Doc. Request No. 24:** Please produce all documents and communications related to the [sic] MBC's efforts to participate in the Quick Fitting sale process in the Receivership, including MBC's request to credit bid its claims in connection with the sale of Quick Fitting's assets. | **Response:** Mueller Brass objects to this Request as it is overly broad, unduly burdensome, beyond the scope of discovery in this case under Fed. R. Civ. P. 26, and <u>seeks documents that are not relevant or material to this lawsuit and which have no potential to make any material fact in dispute (of which there are none) more or less likely to be true</u>. <u>Whether or not Mueller Brass participated in Quick Fitting's sale in no way impacts Crompton's guaranty liability. None of the documents requested have anything to do with Crompton's Personal Guaranty or his breach thereof</u>. <u>Mueller Brass does not know to what "credit bid" Crompton is referring in any event</u>. Mueller Brass further objects as the Request seeks information protected by the attorney-client privilege. | *MBC's recitation of an obsolete, rejected relevance objection is improper and provides no grounds for withholding any responsive documents.*<br><br>*Further, MBC's claim that it "does not know what 'credit bid' Crompton is referring" is knowingly false and in bad faith. See "MUELLER BRASS CO.'S PETITION FOR ALLOWANCE OF SECURED CLAIMS, FOR PAYMENT OF SECURED CLAIMS, <u>AND FOR AUTHORITY TO CREDIT BID</u>" filed October 1, 2020 in the Receivership.* |
| **Doc. Request No. 26:** Please produce all documents and | **Response:** Mueller Brass objects to this Request as it is overly broad, unduly burdensome, beyond the scope of | *MBC's recitation of an obsolete, rejected relevance objection is* |



| | | |
|---|---|---|
| communications related to MBC's request for and calculation of post-petition interest on its secured claims filed in the Receivership. | discovery in this case under Fed. R. Civ. P. 26, and <u>seeks documents that are not relevant or material to this lawsuit and which have no potential to make any material fact in dispute (of which there are none) more or less likely to be true. None of the documents requested have anything to do with Crompton's Personal Guaranty or his breach thereof. Whether Mueller Brass requested (or did not request) "post-petition interest" has nothing to do with Crompton's obligations to Mueller Brass or his debt obligation.</u> Mueller Brass further objects as the documents sought, to the extent they exist, are equally available to Crompton including, inter alia, any filings in the Receivership evidencing such a request. Mueller Brass further objects as the Request seeks information protected by the attorney-client privilege and mediation privilege, as well as the proscriptions identified in Tenn. Sup. Ct. Rule 31, Section 7 and the Federal Rules of Evidence. Without waiving any of the foregoing objections, <u>to the extent Mueller Brass possesses a non-privileged interest calculation as of the mediation date, it will be produced.</u> | ***improper and provides n. grounds for withholding any responsive documents.***<br><br>***Crompton expects all "non-privileged interest calculation" documents, as referenced in this response, to be fully and promptly produced.*** |
| **Doc. Request No. 28:** Please produce all non-privileged documents and communications related to the Receivership Settlement. | Mueller Brass objects to this Request as it is overly broad, unduly burdensome, beyond the scope of discovery in this case under Fed. R. Civ. P. 26, and <u>seeks documents that are not relevant or material to this lawsuit and which have no potential to make any material fact in dispute (of which there are none) more or less likely to be true. None of the documents requested have anything to do with Crompton's Personal Guaranty or his breach thereof. This Request embodies another attempt by Crompton to re-open and relitigate a matter which has now been fully resolved and dismissed by a Rhode Island state court. Matters pertaining to the Receivership are res judicata and subject to preclusion.</u> | ***MBC's recitation of an obsolete, rejected relevance objection is improper and provides n. grounds for withholding any responsive documents.***<br><br>***Further, MBCs argumentative statements and legal conclusions regarding res judicata and preclusion do not constitute proper objections or grounds for refusing to produce responsive documents.*** |



|  | Mueller Brass further objects as the Request seeks materials exchanged as part of a confidential mediation process, which cannot be disclosed. Mueller Brass further objects as the Request seeks information protected by the attorney-client privilege and mediation privilege, as well as the proscriptions identified in Tenn. Sup. Ct. Rule 31, Section 7 and the Federal Rules of Evidence. |  |
|---|---|---|

**3. MBC's total failure to respond to Document Request Nos. 29–35 results in waiver any objection to the production of responsive documents.**

MBC's November 22 written responses *contain no response* to the following Requests for Production served by Crompton on October 14:

**Document Request No. 29:** Please produce all documents and communications related to MBC's allocation of settlement payment proceeds received from Quick Fitting's Receiver.

**Document Request No. 30:** Please produce all communications between MBC and any Quick Fitting employee (and/or representative of any Quick Fitting employee) occurring between May 1, 2020 and the Receiver's sale of Quick Fitting's assets in December 2020.

**Document Request No. 31:** Please produce all documents and communications related to the value MBC attributed to Quick Fitting's release of legal claims in the Receivership Settlement.

**Document Request No. 32:** Please produce all documents and communications related to the description of Quick Fitting's secured debt and the Receivership Settlement payment in MLI's 10-Q and 8-K reports filed with the Securities and Exchange Commission, e.g., the reference to "payments received on notes receivable of $8.5 million" on page 33 of MLI's Form 10-Q for period ending June 26, 2021.

**Document Request No. 33:** Please produce MBC's financial statements, including its balance sheet and statement of cash flows from January 1, 2020 to August 1, 2021.

**Document Request No. 34:** Please produce all documents and communications supporting, or showing a lack of support for, the allegation in paragraph 38 of MBC's Complaint in this Action.

**Document Request No. 35:** To the extent not already encompassed by a Request, please produce all documents constituting, reflecting, memorializing, or describing any statements made by Greg Christopher, written or oral, relating to the circumstances, situations, facts and/or events described in Crompton's Counterclaims.

Despite being afforded an extra week to respond, MBC has failed to respond to the above requests within the 30-day requirement of Rule 34 and the 7-day extension afforded by Crompton.  Therefore, MBC has waived any objection to the above requests for production.  *Reynolds & Reynolds Co., Inc. v. Alan Vines Auto. of Jackson, LLC*, No. 1:20-MC-0003-STA, 2020 WL 5797923, at *4 (W.D. Tenn. Sept. 28,



2020) ("A responding party waives any objections to Rule 34 requests for production if the party fails to raise objections within the 30-day time limit to make a response."). The above requests are clearly relevant to the defenses, damages, and allocation issues discussed above, and MBC has forfeited any grounds for further delay and avoidance. MBC is obligated to make a full, prompt production of responsive documents.

4. **You and your clients' position show bad-faith and an abuse of the discovery process.**

Your discovery tactics strongly suggest that your clients' efforts to prepare responses and gather documents were merely a pretense, designed to conceal their indifference to cooperating in meaningful discovery for as long as possible. Your clients' actions are prejudicial to Crompton and directly impede the fact-finding process by which the Court will evaluate the issues to be decided in this case. Please be advised that we reserve and will pursue all available remedies in this regard.

5. **MBC and MLI must be prepared to respond to all questioning consistent with Rule 30(b)(6).**

With respect to depositions, please be aware that we intend to take Rule 30(b)(6) depositions of both MBC and MLI. Given the concerns raised in this letter and your unfounded legal objections and positions, we remind you that each of your clients has "a duty to *prepare* its 30(b)(6) witnesses to speak *for the corporation* on all discoverable information and to give full, complete and unevasive answers." *Fed. Deposit Ins. Corp. v. Butcher*, 116 F.R.D. 196, 201 (E.D. Tenn. 1986) (emphasis in original), *aff'd*, 116 F.R.D. 203 (E.D. Tenn. 1987).

\* \* \*

Again, we are available to discuss these matters during the afternoon of November 29 or November 30.

Sincerely,

Michael J. Sullivan

*Attorneys for David Crompton*