IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

MUELLER BRASS CO.,

    Plaintiff,

v.                                                       No. 2:20-cv-02496-SHL-atc

DAVID CROMPTON,

    Defendant.

**MUELLER BRASS CO.'S RESPONSE IN OPPOSITION TO DEFENDANT DAVID CROMPTON'S SUPPLEMENTAL BRIEF IN SUPPORT OF HIS MOTION TO COMPEL**

**COMES NOW**, the Plaintiff, Mueller Brass Co. ("Mueller Brass"), and files this Response in Opposition to Defendant, David Crompton's ("Crompton"), supplemental brief, (D.E. 122), offered in support of his Motion to Compel, (D.E. 96), previously filed with the Court.

## **INTRODUCTION**

Crompton begins his supplemental filing by describing the Court's recent Order on the parties' various dispositive motions, (D.E. 104) (the "Court's Order"), as a "sweeping victory in virtually every respect." (D.E. 122 at pg. 1).[1] As he has demonstrated throughout this litigation, Crompton fundamentally misapprehends the law and his liability. It is difficult to fathom how having almost all your counterclaims thrown out on the pleadings and owing Mueller Brass

---

[1] As articulated in Mueller Brass' recently filed Supplemental Brief, (D.E. 123), Mueller Brass respectfully disagrees with certain of the rulings contained in the Court's Orders, but acknowledges that the Court's Order controls the current posture of the case. Mueller Brass maintains that its allocation of the settlement payment received in the Receivership action was in accordance with the controlling agreements and law and reserves its appellate rights with respect to those issues.

hundreds of thousands of dollars in attorneys' fees could be classified as a "sweeping victory," even for the most hyperbolic of litigants. Crompton's posturing notwithstanding, his Motion to Compel requires only a review of the Court's Order to reach the correct conclusion.

It is indisputable that the Court's Order significantly narrowed the scope of this case. What survived the Court's rulings on the parties' various dispositive motions are competing claims for attorneys' fees, expenses, and costs. To paraphrase the Court's Order: (1) Mueller Brass may have a claim for attorneys' fees and expenses related to Crompton's admitted breach of his Personal Guaranty, and (2) Crompton may have a claim for attorneys' fees related to Mueller Brass' purported breach of the Personal Guaranty.[2] (D.E. 104 at pg. 49). How Crompton could possibly have a claim to attorneys' fees remains unclear given that there is no contractual provision or statute that entitles him to such fees, and there is no basis upon which Crompton can articulate, let alone establish, that Mueller Brass breached any contractual duty purportedly owed to him as a third-party guarantor of Quick Fitting's debts. Notwithstanding, these are the issues to which the Court has distilled this case. Because these are the only remaining issues in the case, the scope of discovery has been significantly reduced. Crompton's Motion to Compel, however, ignores this reduction in scope, and he continues to seek expansive discovery from Mueller Brass on matters no longer germane to the case. Crompton is wrong, and his Motion to Compel, (D.E. 96) —or at least the parts thereof upon which Crompton proceeds, (*see* D.E. 122)— should be denied.

---

[2] The Court's Order further notes that Crompton may have a similar claim for defense costs associated with Mueller Brass' alleged breach of the Antipodes Loans, a loan transaction to which Crompton was not even a party. The Court classified this claim as being "defensive" in nature; thus, even to extent cognizable (which it is not), it does not afford Crompton damages. Rather, at best, it might entitle him to a set-off of Mueller Brass' damages. But even this result is fundamentally incongruous with the Court's determination in the very same Order that Crompton lacked standing on the issue and that his claims based upon Mueller Brass' purported bad acts towards Crompton's former employer, Quick Fitting, Inc., are precluded.

**ARGUMENT IN RESPONSE**

Much of Crompton's supplemental filing is comprised of his subjective, and nonetheless incorrect, viewpoint of how guaranty law should work. None of that has anything to do with his Motion to Compel. Crompton's frolic and detour does little to inform the analysis now before the Court. Indeed, Crompton devotes only two pages to explaining why he is entitled to what he seeks, and he expends almost no effort on the matter in those pages. The question the Court must answer with respect to Crompton's outstanding discovery requests is: Considering the Court's Order dramatically limiting the scope of this case, is Crompton entitled to the expansive, irrelevant discovery he seeks? The answer to this question is a resounding "no."

**I.   CROMPTON'S REQUEST FOR ADDITIONAL DOCUMENT PRODUCTION SHOULD BE DENIED AS THE MATERIALS HE SEEKS ARE IRRELEVANT, EXCEED THE SCOPE OF DISCOVERY, OR HAVE OTHERWISE ALREADY BEEN PRODUCED.**

Because Crompton does not set forth the Requests upon which he purports to proceed in his recent supplemental filing, Mueller Brass shall list each of them for ease of reference by the Court, along with Mueller Brass' original responses and additional explanation.

**A.   Request No. 19**

**REQUEST NO. 19**: Please produce all documents and communications related to the Personal Guaranty at issue in this Action.

**RESPONSE**: Mueller Brass objects to this Request as vague and ambiguous as it is unable to ascertain what qualifies a document as being sufficiently "related" to the Personal Guaranty to warrant production hereunder. Mueller Brass further objects as this Request is inherently overbroad, unduly burdensome, and beyond the scope of discovery in this case. Mueller Brass should not be forced to undertake the time and expense of locating every single document that potentially references or otherwise arises out of the Personal Guaranty. Mueller Brass further objects as documents potentially responsive to this Request are already in Crompton's possession or otherwise available to him through another source; and Mueller Brass' document production, and supplement thereto, related to Crompton's First Set of Requests for Production likely contain documents potentially responsive to this Request. As it has from the start, Mueller Brass asserts that the only material and relevant document is the Personal

Guaranty itself, a document Crompton has already admitted he signed and failed to pay under.

Mueller Brass is unclear as to what else Crompton is requesting here. Mueller Brass has provided Crompton with more than a thousand pages of documents, including documents he already possessed, and documents not particularly relevant to the case. Stated more plainly, there is nothing left to give. Quick Fitting, Crompton's former employer, and the debtor under the Antipodes Loans, defaulted on those Loans for nonpayment. Immediately after Quick Fitting's default, Mueller Brass delivered a notice of default to Crompton, as guarantor, which he has been in possession of even before this litigation commenced (and which Mueller Brass produced again in any regard). Following Crompton's failure to honor his unconditional Personal Guaranty and pay the debt, Mueller Brass filed suit. There is nothing more to say on the matter; nor is there anything else to produce.

It is also worth noting that Crompton's claim that Mueller Brass somehow breached the Personal Guaranty is purely a legal theory at this point. The material facts are not in dispute. Crompton signed the Personal Guaranty, and he has not, to date, paid anything under the Personal Guaranty – facts which Crompton freely admits, and the Court's Order noted. Mueller Brass filed this lawsuit in July 2020 after it notified Crompton of his default under the Personal Guaranty, and he dubiously claimed ignorance as to the Personal Guaranty's very existence. Contemporaneously with this lawsuit, Mueller Brass filed claims in Quick Fitting's Receivership action in Rhode Island. A year into this case, Mueller Brass settled with the Rhode Island Receiver for less than the value of Mueller Brass' claims against Quick Fitting. In or about late June 2021, Mueller Brass received the settlement payment from the Receiver, in the approximate amount of $9.5 Million, and made an allocation of that payment against Quick Fitting's various debt obligations owed to Mueller Brass. In so doing, Mueller Brass allocated the settlement

payment leaving a $1 Million balance in the Antipodes Loans —the debt obligation Crompton guaranteed— as it was the only debt with an alternative form of security and the debt about which the Receiver raised the most significant challenges to Mueller Brass's right to recovery.³ Thereafter, Judge Lipman, through the Court's Order, made a retroactive allocation of the settlement payment in such a way as to satisfy the principal and interest owed under the Antipodes Loans.⁴  None of this is in dispute.

As best Mueller Brass can discern, Crompton's claims for breach of contract are apparently two-fold.  On the one hand, he seems to have a misguided belief that Mueller Brass was not entitled to initiate legal proceedings against him to recover the debt he personally and unconditionally guaranteed and, therefore, Mueller Brass' collection case here breached some undefined duty Mueller Brass purportedly owed Crompton.  Thus, even though Crompton admits he breached the Personal Guaranty, he believes it is Mueller Brass that should pay him.  That is, in a word, ludicrous.  So, the real question is: Did Mueller Brass' suit against Crompton to enforce his unconditional Personal Guaranty, filed almost a full year before Mueller Brass ever received any payment in the Receivership, somehow breach the Personal Guaranty?  This question is answered simply by reading the Personal Guaranty.

> **The liability of Guarantor under this guaranty shall be primary, direct and immediate and not conditional or contingent upon pursuit by the holder of the Notes of any remedies it may have against Borrower** or any other party with respect to the Notes or any instrument or agreement securing the Notes, whether pursuant to the terms thereof or otherwise. No exercise or non-exercise by Lender of any right given to it hereunder, or under the Loan Agreement, the Notes or any instrument or agreement securing the Notes or this guaranty, and no change, impairment or suspension of any right or remedy of the Lender shall in any way affect any of Guarantor's obligations hereunder or give Guarantor any

---

³ To be clear, the Receiver's challenge to Mueller Brass' claims under the Antipodes Loans was focused on other purported issues beyond any alleged bad conduct by Mueller Brass, which acquired those loans, along with the rights under Crompton's Personal Guaranty, via an arm's length transaction with Antipodes.
⁴ Again, while Mueller Brass respects and acknowledges the Court's decision, Mueller Brass maintains that the Court's allocation was contrary to applicable law and reserves its rights on appeal.

> recourse against Lender.  Without limiting the generality of the foregoing, **the holder of the Notes shall not be required to make any demand on Borrower and/or any other party, or otherwise pursue or exhaust its remedies against Borrower or any other party, before, simultaneously with or after, enforcing its rights and remedies hereunder against Guarantor**.

(D.E. 1-2 at ¶ 3) (emphasis added).  Despite Crompton's suggestion to the Court to the contrary, when Crompton refused Mueller Brass's July 1, 2020 demand for payment under the Personal Guaranty, Mueller Brass was not required to sit around and hope it got paid at some point in the future.  Nor was Mueller Brass required to choose between pursuing claims in the Receivership or pursuing claims against Crompton.  Indeed, Mueller Brass could have foregone filing a claim for the unpaid balance of the Antipodes Loans in the Receivership entirely and, instead, proceeded solely against Crompton here for the full value of the outstanding Antipodes Loans.  Likewise, the fact that Mueller Brass diligently pursued a claim in the Receivership inured to Crompton's benefit by significantly reducing the dollar amount of his potential liability.  Thus, having freely availed himself of the benefit of that reduction in his liability, Crompton's apparent position that Mueller Brass' costly pursuit of claims in the Receivership not only foreclosed its ability to pursue Crompton for the balance owed, but also somehow rendered Mueller Brass liable to him, is particularly stunning and audacious, even by Crompton's standards. More fundamentally, however, it demonstrates Crompton's clear misunderstanding of guarantor liability.

Mueller Brass was fully entitled to enforce Crompton's Personal Guaranty at the same time it assiduously worked to protect its rights in the complex Receivership proceedings in Rhode Island that, contrary to Crompton's bald suppositions, offered no certainty of outcome as to if or when Mueller Brass would ultimately recover on the debts owed.  That was the purpose of the Personal Guaranty in this matter, as it is the purpose of any guaranty of payment.  Indeed,

Crompton's theory in this regard is absurd and contrary to law. What Crompton is, in effect, saying is that the actual terms of a guaranty should be ignored, and a creditor should be permitted to enforce a guaranty only when the principal debtor is likely to be insolvent. But that is not the law in Tennessee, Rhode Island, New Zealand, or anywhere else.

Crompton's alternative theory supposes that Mueller Brass' allocation of the settlement payment from the Receiver, in a manner that left a partial outstanding balance on the Antipodes Loans, somehow breached the Personal Guaranty. Again, reading the Personal Guaranty quickly guts this theory, as does the sequence of events. Even if Mueller Brass were legally required to allocate the settlement funds in the manner Crompton insists upon, which, respectfully, it was not, Crompton ignores the fact that he was in breach of the Personal Guaranty for a nearly a full year before Mueller Brass ever received a dime from the Receiver. Under Crompton's view of things, everyone —the Court included— should simply ignore Crompton's steadfast refusal to honor his Guaranty during that yearlong period and thereafter. No law requires that, and Crompton's Personal Guaranty expressly rejects that. This Court's allocation decision notwithstanding, Crompton remains in breach of the Personal Guaranty for failing to pay the attorneys' fees, expenses, and costs Mueller Brass incurred after Crompton's admitted and continuous breach of the Personal Guaranty –both here and in the Receivership.

Moreover, given Crompton's yearlong refusal to honor his Personal Guaranty before Mueller Brass recovered the Receivership settlement monies, combined with his continuing refusal to reimburse Mueller Brass' attorney's fees, expenses and costs, it is inconceivable how Mueller Brass' allocation of the settlement proceeds itself was a breach of contract, let alone a breach that caused Crompton damage in the form of legal expense. Under either allocation used — whether it be Mueller Brass' original allocation, or the overriding allocation rendered by this

Court — Crompton still would have had a claim to defend, and per this Court's order, continues to have a claim to defend.  Put another way, whether categorized as principal and interest, or as attorney's fees, expenses and costs, there is still a shortfall, and as such, the Personal Guaranty obligates Crompton to make Mueller Brass whole.

Although he will try to convince this Court otherwise, Crompton was the guarantor in this matter.  Nowhere did Mueller Brass guaranty reimbursement of any legal fees Crompton incurred purely as a byproduct of his refusal to honor his Personal Guaranty.  Indeed, most if not all of Crompton's purported legal expense could have been avoided had he honored his Personal Guaranty upon receipt of Mueller Brass' July 1, 2020 demand in the first place, instead of requiring Mueller Brass to engage in protracted litigation to recover the debts owed.  Crompton's legal expense was a consequence of his former employer Quick Fitting's defaults, combined with his refusal to honor his obligations and his and his counsel's tactical decisions over the last nearly two-year period; not any allocation of the settlement proceeds received in June 2021.

As to Request No. 19, there is nothing left to give and, even if there were, it does nothing to inform the question of Crompton's continued breach of his Personal Guaranty.  For these reasons, Crompton's request for additional documents under Request No. 19 should be denied.

    B.    <u>Request No. 23</u>

    **REQUEST NO. 23**: All documents and communications related to the Intercreditor & Subordination Agreement described in paragraphs 49–52 of Crompton's Counterclaims.

    **RESPONSE**: Mueller Brass objects as documents potentially responsive to this Request are already in Crompton's possession —including the Intercreditor & Subordination Agreement which Crompton himself filed in the case— or otherwise available to him through another source; and Mueller Brass' document production, and supplement thereto, related to Crompton's First Set of Requests for Production likely contain documents potentially responsive to this Request. Crompton seeks documents related to counterclaims which he has no standing to bring and, therefore, any documents sought in furtherance of those claims, are

immaterial and their production is by definition overly burdensome. Mueller Brass further objects as the Request seeks information protected by the attorney-client privilege. None of the documents requested have any potential to make it more or less likely that Crompton breached the Personal Guaranty.

Yet again, there is nothing left to give. Even if the Intercreditor & Subordination Agreement was somehow still relevant to anything left in this lawsuit (which it is not), nothing else beyond the document itself matters. The document, and anything related thereto, was only relevant to the issue of allocation, which the Court already resolved, subject to Mueller Brass' appellate rights. To the extent Crompton would argue that he is interested in discovering Mueller Brass' intent related to the Intercreditor & Subordination Agreement, that is irrelevant to his purported claim for breach of contract. Again, Crompton's theory appears to be that Mueller Brass violated the terms of the Intercreditor & Subordination Agreement, and that this somehow entitles Crompton to money. Though Mueller Brass disagrees, the Court has already adjudicated the allocation issue and found that the Intercreditor & Subordination Agreement required Mueller Brass to satisfy the various debt obligations in a particular order. (*See* D.E. 104 at pgs. 20-21). The Court's resolution of the allocation issue and resulting satisfaction of the Antipodes Loans moots anything involving the Intercreditor & Subordination Agreement and allocation. It is indisputable that Crompton is not a party to the Intercreditor & Subordination Agreement. Even if there were more to say on the matter, it would not be relevant given the very narrow focus of this case following the Court's Order. For these reasons, Crompton's request for additional documents under Request No. 23 should be denied.

    C.    **Request No. 24**

**REQUEST NO. 24**: Please produce all documents and communications related to the [sic] MBC's efforts to participate in the Quick Fitting sale process in the Receivership, including MBC's request to credit bid its claims in connection with the sale of Quick Fitting's assets.

> **RESPONSE**: Mueller Brass objects to this Request as it is overly broad, unduly burdensome, beyond the scope of discovery in this case under Fed. R. Civ. P. 26, and seeks documents that are not relevant or material to this lawsuit and which have no potential to make any material fact in dispute (of which there are none) more or less likely to be true. Whether or not Mueller Brass participated in Quick Fitting's sale in no way impacts Crompton's guaranty liability. None of the documents requested have anything to do with Crompton's Personal Guaranty or his breach thereof. Mueller Brass does not know to what "credit bid" Crompton is referring in any event. Mueller Brass further objects as the Request seeks information protected by the attorney-client privilege.

Mueller Brass rests on its prior response. The Request is flawed in its initial premise and, therefore, there is nothing to produce.

**D.      Request No. 28**

> **REQUEST NO. 28**: Please produce all non-privileged documents and communications related to the Receivership Settlement.

> **RESPONSE**: Mueller Brass objects to this Request as it is overly broad, unduly burdensome, beyond the scope of discovery in this case under Fed. R. Civ. P. 26, and seeks documents that are not relevant or material to this lawsuit and which have no potential to make any material fact in dispute (of which there are none) more or less likely to be true. None of the documents requested have anything to do with Crompton's Personal Guaranty or his breach thereof. This Request embodies another attempt by Crompton to re-open and relitigate a matter which has now been fully resolved and dismissed by a Rhode Island state court. Matters pertaining to the Receivership are res judicata and subject to preclusion. Mueller Brass further objects as the Request seeks materials exchanged as part of a confidential mediation process, which cannot be disclosed. Mueller Brass further objects as the Request seeks information protected by the attorney-client privilege and mediation privilege, as well as the proscriptions identified in Tenn. Sup. Ct. Rule 31, Section 7 and the Federal Rules of Evidence.

Issues involving the Receivership settlement and the allocation of the settlement payment have been conclusively resolved —at least at this point— by the Court's Order. Again, even giving credence to Crompton's purported bases supporting a claim for breach of the Personal Guaranty (or anything else), the issue is a legal one. All material facts and issues necessary to answer that question are already known. Was Mueller Brass' decision to allocate the settlement proceeds in the way that it did a breach of the Personal Guaranty, the only agreement to which

10

Crompton is a party? And even if so, did that breach cause Crompton's alleged damages? The answer to both questions is, of course, no, but those remaining issues are legal in nature, and their resolution does not require additional discovery.

As Mueller Brass has repeatedly articulated to Crompton, the settlement with the Receiver was not anticipated and was the product of a real time decision made toward the conclusion of a one-day confidential mediation. As Crompton is acutely aware —mostly because he was the genesis of it— the Receiver insisted on attempting to raise meritless claims during the Receivership to try to reduce Mueller Brass' recovery on its secured claims against Quick Fitting. Those claims never actually existed, but even if they had, they were forever settled and compromised as part of the settlement with the Receiver. The settlement was not the product of a month's (nor even week's) long process; rather, it developed over the course of a few hours during a confidential mediation. There is no extensive documentary history regarding the settlement – a fact which Mueller Brass has conveyed to Crompton on multiple occasions throughout this litigation.

## CONCLUSION

Pursuant to the Court's Order, the only claims remaining are attorneys' fees claims. Problematically for Crompton, even if Mueller Brass did theoretically breach some contractual obligation owed to him (which is denied), he has no legal right to fees of any kind or in any amount, and he has not plead or articulated any purported "damages" beyond his supposed fees. Those are fees he easily could have avoided had he honored his Personal Guaranty upon receipt of Mueller Brass' July 1, 2020 demand and not compelled Mueller Brass to pursue collection efforts over the course of nearly one year in the Rhode Island Receivership and nearly two years of litigation before this Court. Mueller Brass has already produced more than a thousand pages

of documents. The remaining issues in the case —claims for attorneys' fees and expenses— are exceptionally narrow and what Crompton is requesting is not relevant to those remaining issues. As such, Mueller Brass requests that the Court deny Crompton's request for relief related to his Requests for Production of Documents Nos. 19, 23-24, and 28.

Respectfully submitted,

**GLANKLER BROWN, PLLC**

By: /s/ Aubrey B. Greer
Larry H. Montgomery (TN# 9579)
Aubrey B. Greer (TN# 35613)
6000 Poplar Ave., Suite 400
Memphis, Tennessee 38119
Telephone:    (901) 576-1715
Facsimile:     (901) 525-2389
lmontgomery@glankler.com
agreer@glankler.com

*Attorneys for Plaintiff, Mueller Brass Co.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 28th, 2022, a copy of the foregoing was served on the parties listed below via the Court's ECF system, United States Mail, postage prepaid, and/or electronic mail:

**ASHCROFT LAW FIRM**

Michael J. Sullivan (MA #487210) pro hac
Nathan P. Brennan (MA #389954) pro hac
200 State Street, Floor 7
Boston, Massachusetts 02109
Telephone: (617) 573-9400
Facsimile: (703) 247-5446
msullivan@ashcroftlawfirm.com
nbrennan@ashcroftlawfirm.com

**BURCH PORTER & JOHNSON, PLLC**

Lawrence J. Laurenzi (TN #9529)
Sarah E. Stuart (TN #35329)
130 North Court Avenue
Memphis, Tennessee 38103
Telephone: (901) 524-5000
Facsimile: (901) 524-5024
llaurenzi@bpjlaw.com
sstuart@bpjlaw.com

*Attorneys for Defendant, David Crompton*

/s/   Aubrey B. Greer
Aubrey B. Greer