IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| MUELLER BRASS CO., | ) |
|     Plaintiff, | ) |
| v. | ) |
| | ) No. 2:20-cv-2496-SHL-atc |
| DAVID CROMPTON, | ) |
|     Defendant. | ) |

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF/COUNTER-DEFENDANT MUELLER BRASS CO.'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT/COUNTER-PLAINTIFF DAVID CROMPTON'S MOTION FOR SUMMARY JUDGMENT**

Before the Court are cross-motions for summary judgment. First is Defendant/Counter-Plaintiff David Crompton's ("Crompton") Motion for Summary Judgment (ECF No. 178), Plaintiff/Counter-Defendant Mueller Brass Co.'s ("MBC") Opposition (ECF No. 180) and Crompton's Reply (ECF No. 184). Second is MBC's Motion for Summary Judgment (ECF No. 179), Crompton's Opposition (ECF No. 182) and MBC's Reply (ECF No. 185).

Crompton's Motion for Summary Judgment seeks judgment regarding liability and damages for his claims that MBC breached (1) the terms of the Antipodes Loan and (2) the Personal Guaranty, which claim was previously dismissed. He also seeks judgment on the measure of damages on MBC's attorneys' fees claim, in the event that this Court grants partial summary judgment regarding MBC's alleged breach of the Guaranty.

MBC seeks summary judgment on its claim that Crompton breached the Personal Guaranty, making him liable for damages in the form of attorneys' fees under the terms of the Personal Guaranty and as to Crompton's counterclaims.

For the following reasons, Crompton's Motion for Summary Judgment is **DENIED**, and MBC's Motion for Summary Judgment is **GRANTED** as to its claims that Crompton breached his Personal Guaranty, that it is entitled to judgment as to Crompton's defensive claims, and that it is entitled to attorneys' fees and expenses incurred in the Receivership and in this litigation. Turning to the amount of fees and costs requested, however, the Court cannot assess the reasonableness of the attorneys' fees sought without the submission of the hours each attorney who worked on the Receivership and/or this litigation. Thus, the Court **DIRECTS** MBC to submit all supporting documents **within fourteen days** of this Order.

## BACKGROUND

The facts underlying this case are complex and have been discussed in depth in the Court's February 10 and September 8, 2022 orders, so a full recitation is unnecessary here. (See ECF No. 104 at PageID 1897–1904; ECF No. 163 at PageID 2378–79.) To summarize, MBC brought this action against Crompton on July 10, 2020, alleging that he breached his Personal Guaranty on a pair of loans issued to his company, collectively the "Antipodes Loans." Crompton is the former CEO and majority shareholder of the manufacturing company Quick Fitting. He executed the Personal Guaranty to secure an additional loan from JP Morgan Chase Bank N.A. (the "JPM Loan") for his company, which was under financial stress at the time. About a year later, the company became insolvent, defaulted on its outstanding debt, and entered Receivership in Rhode Island Superior Court. MBC alleges that Crompton breached his Guaranty by failing to make payments on the Antipodes Loans after Quick Fitting's default, the condition precedent for the Personal Guaranty's liability to trigger.

Crompton responded and counterclaimed against MBC and its parent company, Mueller Industries, Inc. ("MLI"), alleging breaches of contract as to both the Antipodes Loans and the

Guaranty (Counts I and II), promissory fraud (Count III), fraudulent misrepresentation (Count IV), negligent misrepresentation (Count V) and breach of fiduciary duty (Count VI), and sought declaratory relief (Count VII). (ECF No. 65 at PageID 785–93.)

In its February 10 Order, the Court dismissed Amended Counterclaim Counts III, IV, V and VI, holding that Crompton lacked standing to assert them, and that they were precluded; MLI was also dismissed as a party because all claims against it had been dismissed. (ECF No. 104 at PageID 1918.) The Court dismissed Counterclaim Count II in its September 8 Order due to Crompton's failure to plead facts sufficient to support a claim for breach of contract—Crompton failed to identify the specific provision of the Personal Guaranty MBC breached. (ECF No. 163 at PageID 2388.)

Crompton now moves for judgment on Counterclaim Count I, his lone remaining claim, which seeks damages for MBC's breach of the Antipodes Loan. (ECF No. 178 at PageID 2505–08.) He also asks this Court to revise its September 8 Order dismissing Count II, arguing that the Court made an error of law. (Id. at PageID 2508–10.) Should the Court reinstate the claim, Crompton seeks summary judgment and damages on the revived claim as well. (Id.)

In its Motion, MBC seeks judgment and damages for Crompton's breach of the Personal Guaranty (ECF No. 179-1 at PageID 2807–10), as well for Crompton's breach and damages claims regarding the Antipodes Loan. (Id. at 2814–20.) It also opposes Crompton's attempts to revise and reinstate his claims relating to the Personal Guaranty. (ECF No. 180 at PageID 3012–15.)

## LEGAL STANDARD

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

3

56(a). The moving party can prove the absence of a genuine issue of material fact by showing that there is a lack of evidence to support the nonmoving party's cause. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). While the court views all evidence and factual inferences in a light most favorable to the non-moving party, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986).

The movant has the initial burden of "demonstrat[ing] the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The burden then shifts to the non-moving party to go beyond the pleadings and designate specific facts showing there is a genuine issue for trial. Id. at 324 (quotations omitted). Ultimately, in evaluating the appropriateness of summary judgment, the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251–52.

## ANALYSIS

Because both Parties seek summary judgment in their favor on the same claims, the following analysis addresses the arguments from each Party as to each claim.

**I.     Breach – Antipodes Loan**

Crompton contends MBC's allocation of the settlement payment outside the agreed-to order of priority—unilaterally subordinating the Antipodes Loan to its own third-in-position loan—amounted to a breach of contract. (ECF No. 178-1 at PageID 2505.) In its February 10 Order, the Court re-allocated the Receivership settlement payment, amortizing both the JPM Loan and the Antipodes Loan. (ECF No. 104 at PageID 1915.) To that end, it mooted the bulk

of this claim, leaving only the question of attorneys' fees outstanding. Nevertheless, Crompton seeks a declaration that MBC breached this contract to provide a basis for damages. (ECF No. 178 at PageID 2507.) The Court had previously determined that, although MBC's alleged unilateral subordination of the Antipodes Loan did not constitute a breach of the Personal Guaranty, it *might* be a breach of the Antipodes Loan agreement itself. (ECF No. 163 at PageID 2388.) Crompton proceeds on these grounds but encounters the same challenge he previously encountered when asserting breach of contract claims—i.e., he is unable to cite to a provision in the Antipodes Loan that MBC breached.

Crompton's end around this problem is to argue that MBC breached provisions in the Intercreditor Agreement, thereby entitling him to damages for breach of the Antipodes Loan. (ECF No. 178-1 at PageID 2505–06.) However, MBC correctly notes that this is not an incorporated agreement. (ECF No. 180 at PageID 3008.) The Intercreditor Agreement makes explicit that it is "not intended to amend or modify any of the provisions of the instruments executed in connection with the Subordinated Loan or the Senior Loans." (ECF No. 70-3 at PageID 1055.) Thus, even if Crompton could show that MBC breached the Intercreditor Agreement, it does not follow that the Antipodes Loan was also breached; the Intercreditor Agreement is effectively a collateral contract.

Because there does not exist a genuine issue of material fact as to whether MBC breached the Antipodes Loan, Crompton's Motion on this matter is **DENIED.** For the same reason, MBC's Motion on this issue is **GRANTED**.

## II.     Crompton's Damages – Breach of Antipodes Loans

Even if Crompton were able to show a breach of the Antipodes Loans, his theory of damages does not comport with the law. Crompton asserts his theory of entitlement to attorneys'

5

fees under an expectation damages-like theory. (ECF No. 178-1 at PageID 2507–08.) He asserts that "it is well settled that the remedy for breach of contract is intended to put the injured party in the same position in which it would have been had the contract been performed." (Id.)

"[D]amages to protect the injured party's expectation interests by awarding the party the benefit of its bargain are the default measure of damages in Tennessee." Alsbrook v. Concorde Career Colls., Inc., 469 F. Supp. 3d 805, 826 (W.D. Tenn. 2020) (citations omitted). As a general matter, attorneys' fees do not constitute expectation damages. See Goings v. Aetna Cas. & Sur. Co., 491 S.W.2d 847, 848 (Tenn. Ct. App. 1972) ("In the absence of a statutory provision . . . or contractual agreement . . . attorney fees incurred by a plaintiff in recovering a judgment for damages is not a proper element of damages and the allowance of such is contrary to the public policy of Tennessee."). Such a determination is consistent with the case law as well, and also follows from a common-sense interpretation of contract damages.[1] Hence, it is generally inappropriate to treat attorneys' fees as expectation damages.

Crompton also briefly alludes to pursuing attorneys' fees under a consequential damages theory. (ECF No. 178-1 at PageID 2508.) "Crompton's costs and attorneys' fees after that date are direct or consequential damages arising from MBC's breach of the contracts. . . . Recovery of those fees will compensate Crompton for actions he was forced to take as a direct result of MBC's conduct." (Id.)

Courts have displayed some inconsistency as to the appropriateness of awarding attorneys' fees without contractual or statutory authorizations. Compare Morrow v. Jones, 165 S.W.3d 254, 259 (Tenn. Ct. App. 2004) (granting attorneys' fees for contract breach), with

---

[1] Barring a case where a party breaches a covenant not to sue, the benefit of not having to interact with an attorney does not flow directly from another party's breach of a commercial contract; it cannot be interpreted as the "benefit of [the] bargain." (Restatement (Second) of Contracts § 344(a).)

6

Pullman Standard, Inc. v. Abex Corp., 693 S.W.2d 336, 338 (Tenn. 1985) ("We continue to adhere to the rule in Tennessee that attorneys' fees are not recoverable in the absence of a statute or contract specifically providing for such recovery"). Regardless, the consensus is that attorneys' fees as contractual damages are generally improper barring exceptional circumstances. See Individual Healthcare Specialists, Inc. v. BlueCross BlueShield of Tenn., Inc., 566 S.W.3d 671, 705 (Tenn. 2019) (collecting cases that illustrate the proposition that, in Tennessee, "[i]f a contract does not specifically or expressly provide for attorney fees, the recovery of fees is not authorized"). "Attorney fees are not ordinarily an element of contract damages."). Crompton has not identified such circumstances.

Put simply, barring the sort of exceptional circumstances that are not present in this case, attorneys' fees are neither expectation damages nor consequential damages. Instead, they only can be recovered pursuant to a valid contract provision or a statute. Crompton has not advanced a claim under either of these sources of entitlement.

Because there is not a genuine issue of material fact as to whether Crompton is entitled to attorneys' fees regardless of the merits of his underlying breach of contract claim, Crompton's Motion pertaining to attorneys' fees for the Antipodes Loan is **DENIED**. For the same reason, MBC's Motion on this issue is **GRANTED**.

### III.     Reconsideration & Breach – Personal Guaranty

Crompton also seeks reconsideration of the dismissal of his breach of Personal Guaranty claim (Count II) from the September 8 Order granting MBC's Motion to Revise the February 10 and July 13 Orders. (ECF No. 178-1 at PageID 2508.) He contends that the claim should move forward and that he is entitled to summary judgment as to it. (Id.)

7

### A. Legal Standard for Motions to Revise

The Federal Rules of Civil Procedure allow a district court to revise an order adjudicating fewer than all the claims or rights and liabilities of all parties any time before final judgment. Fed. R. Civ. P. 54(b). District courts in this circuit "have authority both under common law and Rule 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment." Rodriguez v. Tenn. Laborers Health & Welfare Fund, 89 F. App'x 949, 959 (6th Cir. 2004) (citation omitted). Local Rule 7.3(b) requires a motion for revision of an interlocutory order to show:

> (1) a material difference in fact or law from that which was presented to the Court before entry of the interlocutory order for which revision is sought, . . . ; (2) the occurrence of new material facts or a change of law occurring after the time of such order; or (3) a manifest failure by the Court to consider material facts or dispositive legal arguments that were presented to the Court before such interlocutory order.

Local Rule 7.3(c) forbids the repetition of any oral or written arguments "made by the movant in support of or in opposition to the interlocutory order that the party seeks to have revised," and warns parties that violation of this provision may result in "appropriate sanctions, including, but not limited to, striking the filing." LR 7.3(c). MBC argues that Crompton's Motion to Revise is procedurally defective, violates Local Rule 7.3(c) by repeating arguments already addressed by this Court and is substantively meritless.

### B. Merits of Crompton's Motion to Revise

Crompton moves for reconsideration under Local Rule 7.3(b)'s third prong, contending that this Court's dismissal of his breach of guaranty claim (Count II) in its September 8 Order was an error of law. He maintains the Court erroneously dismissed this claim on the single ground that he was required but failed to plead and prove a breach of a specific contractual provision. The pertinent section of that order is reproduced in full below:

8

> The Court agrees with MBC that Crompton has failed to plead facts sufficient to support a claim for breach of contract, namely as to the second element, a breach of the Guaranty. **As MBC correctly notes, at no point has Crompton indicated the specific provision of the Guaranty that MBC has breached.** In his Amended Counterclaim, Crompton indicates that his argument relies largely on MBC's allegedly unilateral subordination of the Antipodes Loan when allocating the Rhode Island settlement proceeds, which Crompton argues is a violation of the Antipodes Loan Agreement and by extension a violation of the Guaranty. (ECF No. 65 at PageID 788.) While this may violate a provision of the Antipodes Loan agreement itself, nothing in the Guaranty prevents such conduct. **In fact, Crompton granted the holder of the Antipodes Loans, now MBC, the power to, "in its sole and absolute discretion, without further assent of Guarantor, and without in any way releasing, affecting or impairing the obligations and liabilities of Guarantor hereunder, . . . modify, amend, or change any provisions of the [Antipodes Loans]."** (ECF No. 1-2 at PageID 57.) Crompton failed to plead that MBC's alleged actions, including the subordination of the Antipodes Loans during allocation of the settlement proceeds, breached any specific provision of the Guaranty.

(ECF No. 163 at PageID 2388–89) (emphasis added).

The Court emphasized that Crompton gave the Antipodes Loans holder "sole and absolute discretion" to modify the Loans' provisions. (Id.) Crompton relies on <u>Dick Broadcasting Co., Inc. of Tennessee v. Oak Ridge FM, Inc.</u>, 395 S.W.3d 653, 669 (Tenn. 2013), to confront this point, but, unlike there, where the contract was silent with respect to the way parties were to treat each other, the standard of conduct governing MBC, the current loan-holder in this case, is defined to be nearly limitless in the contract. (ECF No. 1-2 at PageID 57.) To be precise, Crompton agreed that "the holder of the Notes may, in its sole and absolute discretion, without notice to or further assent of [Crompton] . . . modify, amend or change any provisions of the [Loans]." (Id.) This provision in the Personal Guaranty is neither ambiguous nor incomplete; it makes explicit that MBC has complete control to dictate the terms of the loans. Because MBC was not under any obligation to consult or work with Crompton to ensure that his end of the bargain was completed, the covenant of good faith and fair dealing is immaterial in

this case. Crompton's threadbare assertion of MBC's breach of implied duties is insufficient to overcome the enormous discretion that the Personal Guaranty's terms grants MBC.

For the foregoing reasons Crompton's Motion to Revise and the corresponding Motion for Summary Judgment are **DENIED**. For the same reasons, MBC's Motion for Summary Judgment on this issue is **GRANTED**.

### IV.     Crompton's Damages – Breach of Personal Guaranty

Crompton pursues an alternative route to attorneys' fees under Claim II that encounters the same insurmountable difficulties as his damages claim for attorneys' fees with respect to the Count I breach of Antipodes Loans claim. See supra pp. 5–8.

For the same reasons as those outlined as to Count I, Crompton's Motion for damages is **DENIED**. Likewise, MBC's Motion on this issue is **GRANTED**.

### V.      MBC's Damages – Breach of Personal Guaranty

The Court previously determined that Crompton breached the Personal Guaranty when Quick Fitting defaulted on its debt and entered receivership in early 2020. (ECF No. 163 at PageID 2388 n.2.) With both of Crompton's breach counterclaims disposed of, the final issue to resolve is MBC's damages. MBC correctly notes that each of the instruments covered by Crompton's Personal Guaranty as well as the Guaranty itself include repayment provisions which entitle the loan holder (now MBC) to repayment from Crompton for (1) all of Mueller Brass' attorneys' fees and expenses in enforcing Quick Fitting's NZ Note (ECF No. 1-1 at PageID 16); (2) all of Mueller Brass' attorneys' fees and expenses enforcing Quick Fitting's Yen Note (id. at PageID 23); (3) all of Mueller Brass' attorneys' fees and expenses in pursuing Quick Fitting under the Loan Agreement (id. at PageID 45–46, § 7.02); and (4) all of Mueller Brass'

attorneys' fees and expenses in pursuing Crompton under the Personal Guaranty (ECF No. 1-2 at PageID 62–63 ¶¶ 16, 20).

### A. Rule 9(g) Pleading Requirements

Crompton argues that MBC's claims for its receivership fees are barred due to its failure to seek them in the complaint, in violation of federal pleading requirements. See Fed. R. Civ. P. 9(g) ("If an item of special damage is claimed, it must be specifically stated."); In re American Cas. Co., 851 F.2d 794 (6th Cir. 1988) (explaining that attorneys' fees "[are] in the nature of special damages and so should be specifically pleaded if they are to be claimed"). Crompton extends these same arguments to MBC's request for litigation fees incurred while prosecuting this action. He also contends that MBC failed to mitigate, distinguish between costs to enforce its rights and defend against counterclaims, or meet its burden of showing that all fees in this litigation are reasonable and justified.

Turning first to the question of pleading requirements per Rule 9(g), the original complaint must be revisited. MBC's Prayer for Relief included the request that "Mueller Brass be awarded its reasonable attorney fees and expenses incurred to bring and prosecute this action," and "[f]or such and other relief to which Mueller Brass may be entitled, whether under statute, **contract**, principles of equity, or at law." (ECF No. 1 at PageID 12) (emphasis added.)

MBC has satisfied the pleading requirements for requesting attorneys' fees covering the costs of this litigation as Line C of the Prayer for Relief explicitly pleads them. (Id.) Second, MBC has also satisfied the pleading requirements for Receivership Fees. (Id.) Line G seeks all additional relief MBC may be entitled to, which includes contractual entitlements. (Id.) Those contractual entitlements include, as previously discussed, the entitlement of MBC, as the holder of the Personal Guaranty to hold Crompton, as the guarantor, liable for all expenses incurred in connection with enforcing the rights contained therein, including the enforcement of both loan

11

agreements subject to the Guaranty.  (See supra pp. 11.)  In summary, MBC's inclusion of a demand for attorneys' fees, as well as contractual remedies which in turn includes attorneys' fees, in its original complaint satisfies Rule 9(g)'s pleading requirements.

### B.  Reasonableness of MBC's Attorneys' Fees

Because MBC's Motion for Summary Judgment has been granted, and its request for attorneys' fees sufficiently plead, the Court **GRANTS** its request for an award of attorneys' fees. However, the Court must assess the reasonableness of those fees.  See supra pp. 1–2.

"When the parties' contract provides that the prevailing party is entitled to reasonable attorney's fees in litigation to enforce the contract, the party who prevails is contractually entitled to recover its reasonable attorney's fees, and the trial court has no discretion regarding whether to award attorney's fees or not.  However, determining the amount of attorney's fee that is reasonable is within the trial court's discretion."  Hosier v. Crye-Leike Com., No. M2000-01182-COA-R3-CV, 2001 WL 799740, at *6 (Tenn. Ct. App. July 17, 2001) (citations omitted); see also Wilson Mgmt. Co. v. Star Distribs. Co., 745 S.W.2d 870, 873 (Tenn. 1988) (explaining that, "where an attorney's fee is based upon a contractual agreement expressly providing for a reasonable fee, the award must be based upon the guidelines by which a reasonable fee is determined").  Reasonableness under Tennessee law turns on "the facts of the case, not on the prevailing customs in the area."  Hosier, 2001 WL 799740, at *8 (citation omitted).  Factors to consider in assessing the reasonableness of requested fees include not only "[t]he time expended and hourly rate charged," but also "the nature of the services rendered, the novelty and difficulty of the issues involved, the skill required to perform the services properly, the results obtained, and the experience, skill, and reputation of the attorney performing the services."  Id.

There are two relevant billing periods to be considered in determining whether the attorneys' fees MBS seeks are reasonable: the Receivership and the Litigation periods. MBC submits affidavits from each firm it employed in both the Rhode Island Receivership and this case. The calculations are included in the tables below:

| MBC RI Receivership Attorneys' Fees | | | |
|---|---|---|---|
| Firm | Hours | Range of Firm Billing Rates | Total Fees & Expenses |
| Willkie Farr & Gallagher | 361.7 hours | $787.50/hour - $1,630/hour | $464,489.50 fees, $9,084.05 expenses |
| Hinckley Allen & Snyder | 273.7 hours | $310/hour - $810/hour | $195,315 fees, $3,120 expenses |
| | | | **$672,008.55 total** |

| MBC TN Litigation Attorneys' Fees | | | |
|---|---|---|---|
| Firm | Hours | Range of Firm Billing Rates | Total Fees & Expenses |
| Willkie Farr & Gallagher | 133.7 hours | $945/hour - $1,485/hour | $188,652.50 fees |
| Hinckley Allen & Snyder | 18.7 hours | $310/hour - $810 hour | $11,961 fees |
| Glankler Brown | Not Provided | $225/hour - $405/hour | $393,297.50 fees, $7,612.89 expenses |
| Dentons Kensington Swan | 54.72 hours | $490 NZD/hour - $750 NZD/hour | $18,451.60 USD fees ($16,093.07 USD + $3,521.90 NZD) |
| | | | **$619,975.49 total** |

| **TOTAL** | | **$1,291,984.04** |
|---|---|---|

(ECF No. 179-2 at PageID 2951–75.)

The Court is unable to fully analyze the reasonableness of MBC's requested attorneys' fees solely based on the current briefing. Despite the otherwise thorough nature of MBC's proffered affidavits (see id.), not one includes the hours billed *by each individual attorney or time entries for the tasks completed*; rather, each includes only the total hours billed by each firm and the attorneys' hourly rates. The Court therefore cannot assess whether, for example,

13

attorneys who billed at higher rates were overrepresented in the total hours billed, if there were duplicative time entries, or if the hours claimed for the work performed were unreasonable. Thus, additional briefing on this issue is required.

## CONCLUSION

For the foregoing reasons, Crompton's Motion for Summary Judgment is **DENIED**, and MBC's Motion for Summary Judgment is **GRANTED**.  MBC is **ORDERED** to file supplemental briefing on the docket within **fourteen days** of entry of this Order clarifying the hours worked by each attorney, the accompanying time entries, as well as arguments summarizing how the requested fees are reasonable under Tennessee law.  Crompton may file a Response to this supplemental briefing within **fourteen days** addressing solely the reasonableness of MBC's requested fees.

**IT IS SO ORDERED,** this 21st day of May, 2024.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
CHIEF UNITED STATES DISTRICT JUDGE
