## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

MUELLER BRASS CO.,                          )
    Plaintiff/Counter-Defendant,        )
                                        )
v.                                          )          No. 2:20-cv-02496-SHL-atc
                                        )
DAVID CROMPTON,                             )
    Defendant/Counter-Plaintiff.        )

## ORDER DENYING MOTION TO STAY DISCOVERY AND
## GRANTING MOTION FOR PROTECTIVE ORDER

Before the Court are two motions by Defendant David Crompton.  First, Crompton filed

the Motion to Stay Discovery in Aid of Execution of Judgment and/or Enforcement of the

Judgement Without Bond, filed December 2, 2025.  (ECF No. 210.)  Plaintiff Mueller Brass Co.

responded in opposition on December 8.  (ECF No. 211.)

Second, Crompton filed the Motion for Protective Order on December 12.  (ECF No.

213.)  He seeks to avoid the expense of traveling to Memphis, Tennessee, for a post-judgment

deposition, asking instead that Mueller Brass either hold the deposition electronically, move the

location of deposition to Connecticut, or pay his travel costs.  (ECF No. 213-1 at PageID 3917–

20.)  Mueller Brass indicated that it opposed the Motion (id. at PageID 3921), but it did not file a

response.

For the reasons stated below, the Motion to Stay Discovery is **DENIED** and the Motion

for Protective Order is **GRANTED**.

## BACKGROUND

The facts underlying this case are complex and have been discussed in depth in the

Court's February 10 and September 8, 2022 orders.  (See ECF Nos. 104 at PageID 1897–1904;

163 at PageID 2378–79.)  In summary, Mueller Brass brought this action against Crompton on July 10, 2020, alleging that he breached his Personal Guaranty on a pair of loans issued to his company.  Crompton is the former CEO and majority shareholder of the manufacturing company Quick Fitting.  He executed the Personal Guaranty to secure an additional loan for Quick Fitting, which was under financial stress.  Crucially, the Guaranty Agreement contained a provision that authorized the collection of attorneys' fees in connection with its enforcement.  About a year later, Quick Fitting became insolvent, defaulted on its outstanding debt, and entered receivership in Rhode Island Superior Court.  Mueller Brass became the beneficiary of the Guaranty amid the Rhode Island litigation.  It then filed an action in this Court for breach of guaranty after Crompton failed to make payments on the loans.

The Parties spent roughly a year in this Court litigating discovery disputes and counterclaims by Crompton, culminating in cross-motions for summary judgment.  (See ECF Nos. 179–82; 184–87.)  Ultimately, on June 2, 2025, the Court awarded Mueller Brass reasonable attorney's fees in the amount of $457,324.31.  (ECF No. 192.)  Crompton filed a notice of appeal on July 1.  (ECF No. 194.)  The appeal is still pending, with oral arguments scheduled for June 4, 2026.

On October 13, 2025, Mueller Brass served Crompton with its Rule 69 Interrogatories and Requests for Production.  (ECF No. 211 at PageID 3856.)  One week later, it served its Rule 69 Deposition Notice in advance of a November 18 deposition in Memphis.  (Id.)  Crompton asked for a thirty-day extension on his deadlines to respond to all discovery, which Mueller Brass agreed to.  (Id.)

Then, instead of responding to the discovery, Crompton filed the Motion to Stay on December 2, 2025.  (ECF No. 210.)  He argues that, during the pendency of his appeal, Mueller

2

Brass ought not pursue discovery in aid of the execution of the judgment because it "knows Crompton has no ability to pay." (Id. at PageID 3836–37.) He asserts that the company's efforts to get answers to interrogatories and to conduct a deposition seem "intended to unduly harass Crompton and punish him for pursuing his appellate rights." (Id. at PageID 3837.) In support, he attaches a sworn declaration that he "is unable to pay any portion of the current judgment" or the cost of a bond for the stay. (Id. at PageID 3841.) Thus, he asks the Court, in its discretion, to grant him a stay of discovery. (Id.) In response, Mueller Brass states that it "doesn't take Crompton's word for it." (ECF No. 211 at PageID 3851.) It argues that the very purpose of Rule 69 is "so that judgment creditors can conduct their own investigation into judgment debtors' financial condition," as it seeks to do here. (Id.)

Also, on December 12, Crompton filed the Motion for Protective Order, requesting an alternative arrangement for his post-judgment deposition to avoid the cost of travel. (ECF No. 213.) Mueller Brass indicated that it opposed the Motion (id. at PageID 3921) but did not file a response.

## APPLICABLE LAW

The Federal Rules provide that, "[i]n aid of the judgment or execution, the judgment creditor or a successor in interest whose interest appears of record may obtain discovery from any person—including the judgment debtor—as provided in these rules or by the procedure of the state where the court is located." Fed. R. Civ. P. 69(a)(2). "[C]ourts have confirmed that '[t]he scope of postjudgment discovery is very broad.'" United States v. Conces, 507 F.3d 1028, 1040 (6th Cir. 2007) (quoting F.D.I.C. v. LeGrand, 43 F.3d 163, 172 (5th Cir. 1995)). Creditors are permitted to "utilize the full panoply of federal discovery measures provided for under federal and state law to obtain information from parties . . . including information about assets on

3

which execution can issue." MAKS Gen. Trading & Contracting, Co. v. Sterling Operations, Inc., No. 10-CV-443, 2013 WL 3834016, at *1 (E.D. Tenn. July 24, 2013) (quoting Aetna Grp., USA, Inc. v. AIDCO Int'l, Inc., No. 11-mc-023, 2011 WL 2295137, at * 1 (S.D. Ohio June 8, 2011)).

The filing of a notice of appeal divests the district court of jurisdiction over matters involved in the appeal. Smith & Nephew, Inc. v. Synthes (U.S.A.), No. 02-2873, 2007 WL 9706817, at *6 (W.D. Tenn. Nov. 27, 2007) (citing Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 58 (1982)). However, courts retain jurisdiction to enforce their judgments. Id. ("Although the court cannot expand or rewrite its prior rulings, it retains jurisdiction to enforce its prior judgments." (citing Am. Town Center v. Hall 83 Assoc., 912 F.2d 104, 110 (6th Cir. 1990))). "[T]he district court has jurisdiction to act to enforce its judgment so long as the judgment has not been stayed or superseded." N.L.R.B. v. Cincinnati Bronze, Inc., 829 F.2d 585, 588 (6th Cir. 1987) (quoting Nicol v. Gulf Fleet Supply Vessels, Inc., 743 F.2d 298, 299 n. 2 (5th Cir. 1984)).

Nevertheless, it "has always been held, . . . that as part of its traditional equipment for the administration of justice, a federal court can stay the enforcement of a judgment pending the outcome of an appeal." Nken v. Holder, 556 U.S. 418, 421 (2009) (quoting Scripps–Howard Radio, Inc. v. FCC, 316 U.S. 4, 9–10 (1942)). To that end, the enforcement of a judgment pending appeal can be stayed under Federal Rule of Civil Procedure 62 in the district court in which the judgment has been entered, or under Federal Rule of Appellate Procedure 8(a) in the appellate court in which the appeal was filed.

So, under the Federal Rules of Civil Procedure, "[a]t any time after judgment is entered, a party may obtain a stay by providing a bond or other security. The stay takes effect when the

4

court approves the bond or other security and remains in effect for the time specified in the bond or other security." Fed. R. Civ. P. 62(b). "A party appealing a decision by a federal district court 'is entitled to a stay of a money judgment as a matter of right if he posts bond.'" Sofco Erectors, Inc. v. Trs. of Ohio Operating Eng'rs Pension Fund, No. 19-CV-2238, 2021 WL 858728, at *2 (S.D. Ohio Mar. 8, 2021) (quoting Am. Mfrs. Mut. Ins. Co. v. Am. Broad-Paramount Theaters, Inc., 87 S. Ct. 1, 3 (1966)).

## ANALYSIS

In the Motion to Stay, Crompton argues that, during the pendency of his appeal, Mueller Brass ought not pursue discovery in aid of the execution of the judgment because it "knows Crompton has no ability to pay." (ECF No. 210.) And, in the Motion for Protective Order, he requests an alternative arrangement for his post-judgment deposition to avoid the cost of travel. (ECF No. 213.) Each motion is considered in turn.

### I.    Motion to Stay

As Mueller Brass points out, "Crompton argues that by declaring poverty, he cuts off Mueller Brass's right to proceed under Rule 69." (ECF No. 211 at PageID 3853.) Yet Crompton offers no authority for that assertion. Indeed, Rule 69 provides that a judgment creditor "may obtain discovery from any person—including the judgment debtor," without any exception for a debtor's declaration of his ability to pay. Fed. R. Civ. P. 69(a)(2). Crompton argues that the Court has the discretion to grant a stay, but does not state any independent reason, outside of his own declaration of poverty, why it should do so.

Moreover, there is no indication that Mueller Brass seeks the discovery to harass Crompton, or that it is acting in any way other than in the ordinary course of business. Nor will Mueller Brass's limited discovery "needlessly increase the cost of litigation" in view of the

5

extensive litigation already conducted in this case, which gave rise to the $457,324.31 in attorneys' fees in the first place.

Because Crompton does not point to any independent reason for granting a stay of discovery, and has posted no bond in support of his request, the Motion to Stay is **DENIED**.

## II.     Motion for Protective Order

In the Motion for Protective Order, Crompton argues that it is unnecessary for him to travel to Memphis for his post-judgment deposition because "a remote deposition is fair to both parties" and because he lacks "the financial means to travel to Memphis."  (ECF No. 213-1 at PageID 3914–15.)  He asserts that there is nothing "difficult or complex about the subjects in Crompton's deposition that would necessitate an in-person deposition."  (Id. at PageID 3918 (citing Brasfield v. Source Broadband Servs., LLC, 255 F.R.D. 447, 450 (W.D. Tenn. 2008) ("The court sees no reason why the relatively simple, straightforward issues in this case would require a deposition that could not be conducted by alternative means, such as the phone or video conferencing.")).)  Mueller Brass indicates that it opposes the Motion (id. at PageID 3921) but offers no written response in opposition.

"A party or any person from whom discovery is sought may move for a protective order[,] . . . on matters relating to a deposition, in the court for the district where the deposition will be taken."  Fed. R. Civ. P. 26(c)(1).  "The court may, for good cause, issue an order to protect a party or person from . . . undue burden or expense, including . . . specifying terms, including time and place or the allocation of expenses, for the disclosure or discovery . . . ."  Fed. R. Civ. P. 26(c)(1)(B).

As in Brasfield, 255 F.R.D. at 450, the issues to be covered in Crompton's deposition appear straightforward.  Without taking any position on Crompton's ability to pay, and

especially because Mueller Brass offers no counterargument, the Court finds that requiring Crompton to travel to Memphis for a straightforward deposition is an "undue burden or expense" that is easily avoided.  Mueller Brass can protect its interests adequately via teleconference or, if it prefers, by paying the costs of travel.

Thus, the Motion for Protective Order is **GRANTED** according to the terms below.

### CONCLUSION

For the reasons stated above, Crompton's Motion to Stay Discovery is **DENIED** and his Motion for Protective Order is **GRANTED**.

Crompton shall not be required to travel to Memphis for a deposition.  If Mueller Brass wishes to take an in-person deposition of Crompton, it may travel to Crompton's city of residence.  Alternatively, if Mueller Brass wishes to take an in-person deposition of Crompton in Memphis, it may do so provided that it pays the costs of travel (airfare and one night's lodging, if necessary) for Crompton and one attorney.  Mueller Brass may also conduct the deposition through alternative means, such as a remote deposition via telephone or video conferencing.

**IT IS SO ORDERED,** this 1st day of June, 2026.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
UNITED STATES DISTRICT JUDGE

7